# <u>EXHIBIT A</u>

**SENIOR SECURED, SUPER-PRIORITY DEBTOR-IN-POSSESSION
LOAN AND SECURITY AGREEMENT**

**Assuncao Bros., Inc., BORROWER**

**Vollers Excavation and Construction, Inc., LENDER**

**DOCUMENTS DATED FOR REFERENCE PURPOSES ONLY:  AUGUST 3, 2022**

## TABLE OF CONTENTS

ARTICLE 1.    ARTICLE 1 DEFINITIONS ................................................................ 1

    1.1.    Definitions ............................................................................................. 1

    1.2.    Incorporation of UCC ........................................................................... 4

ARTICLE 2.    REPRESENTATIONS AND WARRANTIES ...................................... 4

    2.1.    Title ....................................................................................................... 5

    2.2.    Organization .......................................................................................... 5

ARTICLE 3.    AGREEMENT TO LEND; PROJECT FUNDS; AND DISBURSEMENTS ............... 5

    3.1.    Agreement to Lend ................................................................................ 5

    3.2.    Authorized Disbursements .................................................................... 5

    3.3.    Disbursements ....................................................................................... 5

    3.4.    Violation of Laws .................................................................................. 5

    3.5.    Draw Requests ...................................................................................... 5

ARTICLE 4.    GRANT OF SECURITY INTEREST ................................................... 5

    4.1.    Description of Borrower Collateral ....................................................... 5

    4.2.    Expansion of Borrower Collateral ........................................................ 6

    4.3.    Grant of Security Interest ...................................................................... 6

    4.4.    Approved Budget ................................................................................... 6

    4.5.    Super Priority Nature of Secured Obligations and Lender's Liens. ...... 6

    4.6.    No Discharge; Survival of Claims ........................................................ 7

ARTICLE 5.    ARTICLE 5 PAYMENT AND MATURITY .......................................... 7

    5.1.    Calculation of Interest ........................................................................... 7

    5.2.    Payments. .............................................................................................. 7

    5.3.    Default Rate .......................................................................................... 8

    5.4.    Application of Payments ........................................................................ 8

    5.5.    Reapplication of Payments .................................................................... 8

    5.6.    Reports. ................................................................................................. 8

5.7.    Prohibition on Sale or Encumbrance ................................................................ 8

5.8.    Payment of Impositions ..................................................................................... 9

5.9.    Use of the Borrower Collateral .......................................................................... 9

5.10.   Indemnification by Borrower .............................................................................. 9

ARTICLE 6.    RESERVED ........................................................................................... 10

ARTICLE 7.    RESERVED ........................................................................................... 10

ARTICLE 8.    INSURANCE; CASUALTY; CONDEMNATION ................................... 10

8.1.    Required Insurance .......................................................................................... 10

8.2.    Failure to Obtain Insurance ............................................................................. 10

8.3.    Notice of Casualty Loss; Repair of Damage .................................................... 10

8.4.    Controlling Provisions ...................................................................................... 10

8.5.    Lender's Costs ................................................................................................. 11

ARTICLE 9.    EVENT OF DEFAULT; REMEDIES ..................................................... 11

9.1.    Events of Default .............................................................................................. 11

9.2.    Acceleration and Payment ............................................................................... 12

9.3.    Remedies .......................................................................................................... 12

9.4.    Income .............................................................................................................. 13

9.5.    Consequential Damages ................................................................................... 13

ARTICLE 10.    MISCELLANEOUS ............................................................................. 13

10.1.   Rules of Construction ....................................................................................... 13

10.2.   Documents of Further Assurance ..................................................................... 14

10.3.   Severability ....................................................................................................... 14

10.4.   Lender's Right to Cure Defaults ....................................................................... 14

10.5.   Waivers and Approvals By Lender. ................................................................... 14

10.6.   Notices .............................................................................................................. 15

10.7.   Successors and Assigns ................................................................................... 16

10.8.   Time of Essence ............................................................................................... 16

10.9.    Counterparts, Fax ................................................................................................ 16

10.10.    Representation By Counsel ............................................................................... 16

10.11.    No Third Party Beneficiaries; Relationship of Borrower and Lender ............................. 17

10.12.    Waivers By Borrower ........................................................................................ 17

10.13.    Governing Law. ................................................................................................ 17

## SENIOR SECURED, SUPER-PRIORITY DEBTOR-IN-POSSESSION
## LOAN AND SECURITY AGREEMENT

THIS SENIOR SECURED, SUPER-PRIORITY DEBTOR-IN-POSSESSION LOAN AND SECURITY AGREEMENT (this "**Agreement**") is dated as of August 3, 2022, by and between Assuncao Bros., Inc., a New Jersey corporation, ("**Borrower**"), and Vollers Excavation and Construction, Inc., a New Jersey corporation ("**Lender**" and together with Borrower the "**Parties**").

## RECITALS:

A.     On August 3, 2022 (the "**Petition Date**"), Borrower shall commence a chapter 11, subchapter V bankruptcy case (the "**Subchapter V Case**") by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. 101 et seq. (the "**Bankruptcy Code**") with the United States Bankruptcy Court for the District of New Jersey (the "**Bankruptcy Court**").

B.     Borrower intends to continue to operate its business and to manage its business and its assets, as a debtor-in-possession pursuant to Section 1184 of the Bankruptcy Code.

C.     Borrower has requested that Lender provide a senior secured, super-priority loan facility to Borrower to fund, on an interim basis, (i) accrued and unpaid payroll as of the Petition Date (net of applicable payroll taxes), (ii) payroll and labor costs (including applicable payroll taxes) for Subcontracted Projects, and (iii) insurance coverage while and until Borrower seeks final approval of the Sale Motion. Upon the approval of the Sale Motion, Lender has agreed that it will extend the use of its facility for working capital of Borrower as needed for the Subcontracted Projects pursuant to an agreed Budget.

D.     Subject to the terms of this Agreement and the Financing Order, Borrower has agreed to secure all of its liabilities and obligations by granting to Lender a security interest in and lien upon all the Borrower's assets except for assets encumbered by certain Vehicle Loans to the extent of such loans.

NOW, THEREFORE, in consideration of the mutual covenants made herein and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Borrower and Lender hereby agree as follows:

## ARTICLE 1
## DEFINITIONS

1.1     <u>Definitions</u>.  In addition to terms defined elsewhere in this Agreement, the following terms shall have the meaning set forth in this <u>Section 1.1</u>.  Certain terms used only in one Section are defined in the applicable Section.

"**Agreement**": is defined in the introductory paragraph.

"**Approved Budget**": the "Budget" attached to the Financing Order.

"**Bankruptcy Code**": is defined in <u>Recital B</u>.

"**Borrower**": is defined in the introductory paragraph.

"**Borrower Collateral**":  is defined in <u>Section 4.1</u>.

"**Business**": Borrower's business operations.

"**Business Day**": any day which is not a Saturday, Sunday or other legal holiday on which Lender is open for business.

"**Carve Out**": means the carve out from Lender's secured interest in Borrower Collateral for a carve out for approved administrative professional expenses of Borrower in an amount not to exceed the aggregate sum of $75,000.00, subject to, and as is more fully described in, the Financing Order.

"**Charges**": all national, Federal, state, county, city, municipal and/or other Governmental Authority (including, without limitation, the Pension Benefit Guaranty Corporation) taxes, levies, assessments, charges, liens, claims or encumbrances upon and/or relating to the Secured Obligations, Borrower's business, Borrower's ownership and/or use of any of its assets, Borrower's income and/or gross receipts, and/or Borrower's ownership, sale and/or use of the Property.

"**Closing Date**": the date of the initial Disbursement.

"**Default Rate**": is defined in <u>Section 5.3</u>.

"**Disbursement**":  any advance or disbursement of proceeds of the Loan.

"**Draw Request**": any request by Borrower for a Disbursement of proceeds of the Loan.

"**Encumbrance**": any Charge, imposition, tax, lien, claim, exception, lease, license, possessory right, option or encumbrance upon the Property, any other Borrower Collateral, or any interest of Borrower, including without limitation, liens securing Indebtedness, liens arising from judgments and/or mechanic's lien claims upon the Property.

"**Event of Default**": is defined in <u>Section 9.1</u>.

"**Financing Order**":  means the interim and final order of the Bankruptcy Court entered in the Subchapter V Case after a hearing under Bankruptcy Rule 4001(c)(2), together with all permitted extensions, modifications and amendments thereto, which, among other matters but not by way of limitation, authorizes Borrower to obtain credit, incur Indebtedness, and grant liens under this Agreement and the other Loan Documents, as the case may be, and provides for the super priority of Lender's claims on account of all Secured Obligations, substantially in the form of the order attached hereto as <u>Exhibit A</u>.

"**Governmental Authority**": the various governmental or quasi-governmental bodies or agencies having jurisdiction over Borrower, the Property, or any portion thereof, or the use, occupancy, development or operation thereof.

"**Indebtedness**": with respect to any Person, at a particular time (without duplication): (a) all obligations on account of money borrowed by, or credit extended to or on behalf of, or for or on account of deposits with or advances to, such Person; (b) all obligations of such Person evidenced by bonds, debentures, notes or similar instruments; (c) all obligations of such Person for the deferred purchase price of property or services other than trade payables incurred in the ordinary course of business and on terms customary in the trade; (d) all obligations secured by a lien on property owned by such Person (whether or not assumed); (e) all obligations of such Person under capitalized leases (without regard to any limitation of the rights and remedies of the holder of such lien or the lessor under such capitalized lease to repossession or sale of such property); (f) the face amount of all letters of credit issued for the account of such Person and, without duplication, the unreimbursed amount of all drafts drawn thereunder, and all other obligations of such Person associated with such letters of credit or draws thereon; (g) all obligations of such Person in respect of acceptances or similar obligations issued for the account of such Person; (h) all obligations of

such Person under a product financing or similar arrangement; (i) all obligations of such Person under any interest rate or currency protection agreement, interest rate or currency future, interest rate or currency option, interest rate or currency swap or cap or other interest rate or currency hedge agreement; (j) all guaranty equivalents of such Person; and (k) all obligations and liabilities with respect to unfunded vested benefits under any "employee benefit plan" or with respect to withdrawal liabilities incurred under ERISA by such Person or any ERISA Affiliate to a "multiemployer plan", as such terms are defined under the Employee Retirement Income Security Act of 1974.

"**Indemnified Party**":  is defined in <u>Section 5.10</u>.

"**Interest Rate**": is defined in <u>Section 5.1</u>.

"**Lease**":  any lease, license, rental agreement or other occupancy agreement entered into by Borrower with respect to the Business and Property.

"**Loan**": the loan made by Lender to Borrower, to be funded and repaid in accordance with the provisions of this Agreement.

"**Loan Documents**": all documents, agreements, certificates, instruments and other writings now or hereafter executed by or delivered or caused to be delivered by Borrower, or any other Person to or for the benefit of Lender, creating, evidencing or securing all or any part of the Indebtedness evidenced by the Note and this Agreement or evidencing any transaction contemplated herein.

"**Material Adverse Event**":  any event which:  (a) materially adversely affects the Business, assets, results of operations, financial or other condition of the Property or Borrower; (b) materially and adversely affects the ability of Borrower to pay or perform its obligations under the Loan Documents; (c) materially and adversely affects the rights and remedies of Lender under the Loan Documents; (d) materially and adversely affects the value or marketability of the Property.

"**Maturity Date**":  means the date that the earlier of (i) the date the Borrower and Lender close on the contemplated transactions in the Sale Motion, (ii) the date Lender advises the Borrower that the Lender no longer intends to move forward with the contemplated transactions in the Sale Motion; or (iii) the date the Bankruptcy Court denies the Sale Motion.

"**Modifications**": any extension, renewal, substitution, replacement, supplement, amendment or modification of any agreement, certificate, document, instrument or other writing.

"**Note**": that certain Promissory Note made by Borrower payable to the order of Lender.

"**Person**": any individual, sole proprietorship, partnership, limited liability company, joint venture, trust, unincorporated organization, association, corporation, institution, entity, party or government (whether national, Federal, state, county, city, municipal or otherwise, including without limitation any instrumentality, division, agency, body or department thereof).

"**Property**": all assets and rights of Borrower, including the Borrower Collateral.

"**Protective Advances**":  any advances made by Lender, which Lender believes are necessary or appropriate to protect the Property, the Business or protect the security interest of Lender in the Property and other Borrower Collateral.  For greater certainty, by way of illustration and not limitation, Protective Advances shall include (but not be limited to) advances to pay Charges, taxes, insurance premiums, lien

claimants, construction, repair or maintenance costs, and any claim by any architect, contractor or subcontractor for payment for work performed.

**"Sale Motion"**: means Borrower's motion in the Subchapter V Case seeking an order of the Bankruptcy Court authorizing Borrower to (i) sell certain of its assets to Lender free and clear of any and all claims, liens, rights, interests, and encumbrances, (ii) enter into the Subcontracts, and (iii) assume and assign to Vollers certain executory contracts and unexpired equipment and vehicle leases.

**"Secured Obligations"**: (i) the principal of and interest on the Note and/or this Agreement; (ii) all other Indebtedness of any kind arising under, and all amounts of any kind which at any time become due or owing to Lender by Borrower under or with respect to any Loan Document; (iii) all of the covenants, obligations and agreements of Borrower or any other Person in, under or pursuant to any Loan Document; (iv) all fees due and payable by Borrower to Lender; (v) any and all other liabilities, obligations and Indebtedness, howsoever created, arising or evidenced, direct or indirect, absolute or contingent, recourse or nonrecourse, now or hereafter existing or due or to become due, owing to Lender under or with respect to any Loan Document; and (vi) interest on all of the foregoing to the extent it accrues under this Agreement, the Note or any other Loan Document, including, without limitation, interest accruing after an Event of Default, acceleration and/or judgment at the Default Rate in all cases subject to the terms of the Financing Order.

**"Subcontract"**: each agreement executed by the Parties for the performance and completion of non-bonded projects by Lender as authorized by the Bankruptcy Court.

**"Subcontracted Project"**: each non-bonded project for which there is a Subcontract in effect.

**"UCC"**: means the Uniform Commercial Code as from time to time in effect in the State of New Jersey (and each reference in this Agreement to an Article thereof shall refer to that Article as from time to time in effect); provided that in the event that, by reason of mandatory provisions of law (including, without limitation § 9-301 *et seq.*) any or all of the perfection, priority or enforcement of Lender's security interest in any Borrower Collateral is governed by the Uniform Commercial Code as in effect in a jurisdiction other than the State of New York, the term "UCC" shall mean the Uniform Commercial Code (including the Articles thereof) as in effect at such time in such other jurisdiction for purposes of the provisions hereof relating to such attachment, perfection or priority and for purposes of definitions related to such provisions.

**"Unmatured Default"**: any event that with the passage of time, the giving of notice or both would be an Event of Default under any Loan Document.

**"Vehicle Loans"**: any obligation of the Borrower as of the Petition Date due and owing to any third-party in connection with vehicles and equipment financed by Borrower.

**1.2**     **Incorporation of UCC**.  Except as specifically defined in this Agreement, all words, terms and/or phrases used herein shall be defined by the applicable definition ascribed thereto in the UCC, which definitions are incorporated herein by reference as if fully set forth herein.

## ARTICLE 2
## REPRESENTATIONS AND WARRANTIES

To induce Lender to execute this Agreement and to make the Loan, Borrower hereby makes the following representations, warranties and covenants, in addition to those representations set forth in other Sections of this Agreement or any other Loan Document.  All representations and warranties which have been made in any Loan Document shall be true and correct at all times during the term hereof.

    **2.1**    <u>Title</u>.  At all times during the term hereof, Borrower shall be the owner of the Property.

    **2.2**    <u>Organization</u>.  Borrower is a corporation, duly organized, validly existing and in good standing under the Laws of the State of New Jersey and is qualified to do business in each state it currently conducts business.

**ARTICLE 3**
**<u>AGREEMENT TO LEND; PROJECT FUNDS; AND DISBURSEMENTS</u>**

    **3.1**    <u>Agreement to Lend</u>.  In reliance upon all representations, warranties and covenants set forth in this Agreement and the other Loan Documents, Lender agrees to lend to Borrower and Borrower agrees to borrow from Lender a loan, provided that the maximum principal amount of such loan shall not exceed the sum of $200,000.00 plus accrued interest.

    **3.2**    <u>Authorized Disbursements</u>.  In addition to Disbursements authorized by Borrower by delivery of a Draw Request, Borrower hereby irrevocably authorizes Lender to make Disbursements for payment of all fees due and to pay any Charges, taxes, or any other amounts contemplated to be paid by Lender from proceeds of the Loan pursuant to the terms of this Agreement and in accordance with the Approved Budget (as specified in <u>Section 4.4</u> hereof), all without further direction from Borrower.

    **3.3**    <u>Disbursements.</u>  The Loan will be disbursed in a series of draws.  All Disbursements of Loan proceeds must be based on expenses actually incurred or to be expended in accordance with the Approved Budget, as verified by Lender.  Borrower shall not request, and Lender shall not be required to make, a Disbursement of proceeds of the Loan more frequently than twice each week.  Lender shall have no duty to make any Disbursement if an Event of Default or Unmatured Default shall have occurred and be continuing. Lender shall disburse such draws to Borrower via wire transfer to Borrower's operating account as directed by Borrower and within 24 hours of Lender's receipt of a Draw Request signed by Borrower.

    **3.4**    <u>Violation of Laws</u>.  Notwithstanding anything herein contained to the contrary, Lender will not be required to make any Disbursement or perform any other act under this Agreement if, as a result thereof, Lender will violate any Law, order of the Bankruptcy Court, rule, regulation or judicial decision applicable to Borrower or to Lender.

    **3.5**    <u>Draw Requests</u>.  Each Draw Request shall be in writing, signed by Borrower and delivered to Lender via email to bmurray@vollers.cc with a copy to lmodugno@tm-firm.com, specifying in detail the amount and use of the proceeds of each Disbursement.  Each Draw Request shall be in form and detail reasonably acceptable to Lender, and shall be accompanied by such waivers of lien, invoices and certificates, as Lender shall reasonably require.

**ARTICLE 4**
**<u>GRANT OF SECURITY INTEREST</u>**

    **4.1**    <u>Description of Borrower Collateral</u>.  As used herein, "**Borrower Collateral**" means all of the Borrower's now owned or hereafter acquired right, title, and interest in and to each of the following:

        (a)    all of its Accounts (as defined in the UCC) except Accounts related to any project bonded on behalf of the Borrower,

        (b)    all of its commercial tort claims,

        (c)    all of its Deposit Accounts (as defined in the UCC),

5

(d)        all of its General Intangibles (as defined in the UCC),

(e)        all of its letters of credit, letter of credit rights, instruments, notes, drafts, documents and negotiable property,

(f)        all of its Supporting Obligations (as defined in the UCC),

(g)        cash, cash equivalents and money and other assets of Borrower that now or hereafter come into the possession, custody, or control of Lender or its agents, and

(h)        the proceeds and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any or all of the foregoing, and any and all Accounts, books and records, Deposit Accounts, Equipment, Vehicles, General Intangibles, Inventory, Investment Property, negotiable collateral, real property, Supporting Obligations, money or other tangible or intangible property resulting from the sale, exchange, collection, or other disposition of any of the foregoing, or any portion thereof or interest therein, and the proceeds thereof, it being the express intent of Borrower that Borrower Collateral shall include all property and assets of Borrower (real, personal, tangible, intangible, now existing or hereafter arising).

**4.2        Expansion of Borrower Collateral**.  In the event that the Bankruptcy Court enters a final and unappealable order denying the Sale Motion, or if the Bankruptcy Court does not grant the relief sought in the Sale Motion on or before the thirtieth (30th) day following the Petition Date, and unless Borrower agrees to a longer period for the Bankruptcy Court's approval of the Sale Motion, the Borrower Collateral shall also include, in addition to the collateral described in Section 4.1, all unencumbered assets and partially encumbered assets of Borrower.

**4.3        Grant of Security Interest**.  To secure full and prompt payment and performance of all Secured Obligations, Borrower grants to Lender a senior, first-priority security interest in all Borrower Collateral up to the actual amount loaned by Lender to Borrower under this Agreement.

**4.4        Approved Budget**. Borrower shall not incur or agree to incur or agree to incur, any cost or expense, except in accordance with the Financing Order and the Approved Budget, determined on a line-item by line-item basis.

**4.5        Super Priority Nature of Secured Obligations and Lender's Liens.**

(a)        The priority of Lender's liens on the Borrower Collateral shall be set forth in the Financing Order.

(b)        All Secured Obligations shall constitute administrative expenses of Borrower in the Subchapter V Case, with administrative priority and senior secured status under Sections 364(c) and 364(d) of the Bankruptcy Code.  Such superpriority administrative claim shall have priority over any and all other costs and expenses of the kinds specified in, or ordered pursuant to, Sections 105, 326, 328, 330, 331, 363, 364 ,503(b), 506(c), 507(a), 546, 507(b), 726, 1113 and 1114 or any other provision of the Bankruptcy Code, subject only to the Carve Out, and shall at all times be senior to the rights of Borrower, Borrower's estate, and any successor trustee or estate representative in the Subchapter V Case or any subsequent proceeding or case under the Bankruptcy Code, subject only to the Carve Out.  The liens and security interests granted to Lender on the Borrower Collateral and the priorities accorded to the Secured Obligations, shall have the priority and senior secured status afforded by Sections 364(c) and 364(d)(1) of the Bankruptcy Code (all as more fully set forth in the Financing Order) senior to all other claims and interests.

(c)    Lender's liens on the Borrower Collateral and Lender's superpriority administrative claims under Sections 364(c)(1) and 364(d) of the Bankruptcy Code afforded the Secured Obligations shall also have priority over any claims, including, upon entry of the Financing Order, those arising under Section 506(c) of the Bankruptcy Code, subject only to the Carve Out.

**4.6    No Discharge; Survival of Claims**.    Borrower agrees that (a) the Secured Obligations shall not be discharged by the entry of an order confirming a plan of reorganization in the Subchapter V Case (and Borrower, pursuant to Section 1141(d)(4) of the Bankruptcy Code, hereby waives any such discharge) and (b) the superpriority administrative claim granted to Lender pursuant to the Financing Order and the liens granted to Lender pursuant to the Financing Order shall not be affected in any manner by the entry of an order confirming a plan of reorganization in the Subchapter V Case.

**ARTICLE 5**
**PAYMENT AND MATURITY**

**5.1    Calculation of Interest**.    Subject to the provisions of <u>Section 5.3</u> and the Financing Order, the outstanding principal balance of the Loan, from time to time, shall bear interest at a per annum rate (the **"Interest Rate"**) equal to one percent (1%) per annum based upon a 360 day year.

**5.2    Payments.**

(a)    <u>Payments</u>.    Subject to the terms of the Sale Motion, any interest that is not paid shall accrue, shall be added to the principal balance and shall bear interest at the Interest Rate or the Default Rate (as applicable).    The unpaid principal balance, plus accrued but unpaid interest and all other Secured Obligations may be prepaid, in whole or in part, without premium or penalty. Borrower promises to pay to the order of Lender the unpaid principal balance, all accrued but unpaid interest and all other Secured Obligations on the Maturity Date, as may be accelerated without demand, offset, or diminution.    Upon the maturity (whether by acceleration or otherwise) of any of the Secured Obligations, except as otherwise provided in the Financing Order, Lender shall be entitled to immediate payment of such Secured Obligations without further application to or order of the Bankruptcy Court.

(b)    <u>Procedure for Payment</u>.    All payments required to be made pursuant to any Loan Document shall be made by wire transfer of United States Dollars, by cashier's check, or in currency of the United States of America which at the time of payment is legal tender for the payment of public or private debts to Lender at:

By Regular Mail or Overnight Carrier:

Vollers Excavation and Constr. Inc.
Attn: Brendan Murray
3311 US-22
Branchburg, NJ 08876

All payments required under the Loan Documents shall be delivered no later than 3:00 p.m. E.S.T. (or E.D.S.T. as the case may be) on the due date thereof.    If any payment shall be due on a day that is not a Business Day, such payment shall be made on the next succeeding Business Day, and in the case of a principal payment, such extension of time shall be included in computing interest in connection with such payment.    Any payment received after such time shall be deemed to have been received by Lender on the next succeeding Business Day and shall bear interest accordingly.    Any payment tendered other than in currency of the United States or by wire transfer of immediately available funds as aforesaid may be

7

accepted by Lender subject to collection, and interest shall accrue until the Business Day on which good funds are available for immediate use by Lender on or before 3:00 p.m. E.S.T. (or E.D.S.T. as the case may be). All payments due hereunder shall be paid without offset, diminution, deduction, reduction or demand, except as otherwise expressly provided herein.

5.3     **Default Rate**.  Upon the occurrence of any Event of Default and during the continuation thereof and at all times after the Maturity Date, the unpaid principal balance of the Loan and all other Secured Obligations shall bear interest at a rate equal to three percent (3%) per annum (the **"Default Rate"**). Interest at the Default Rate shall be charged on all Secured Obligations from the date an Event of Default occurs.

5.4     **Application of Payments**.  Subject to the provisions of the Financing Order, Lender shall have the right unilaterally (and without notice to or the consent of Borrower, or any other Person) to allocate any and all payments which may be received by or tendered to Lender by Borrower or any other Person at any time or from time to time and which relate in any way to the Loan or any other Secured Obligation then due and payable, in any order of priority as Lender, in its discretion, shall elect.

5.5     **Reapplication of Payments**.  If Lender receives any payment on account of the Secured Obligations, and any such payment(s) and/or proceeds or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside, subordinated and/or required to be repaid to a trustee, receiver or any other Person under any Bankruptcy Law, state or federal Law, common law or equitable cause, *then*, to the extent of such payment(s) or proceeds repaid, the Secured Obligations or part thereof intended to be satisfied shall be revived and continue in full force and effect, as if such payment(s) and/or proceeds had not been received by Lender and applied on account of the Secured Obligations and any lien on the Property and all other Borrower Collateral shall be deemed to continue in full force and effect notwithstanding any release of such lien executed by Lender.  Borrower shall execute any and all agreements, notes, documents, mortgages, security agreements or financing statements reasonably requested by Lender to effect the provisions of this Section.

5.6     **Reports.**

(a)     **Books and Records**.  Borrower shall keep and maintain, at Borrower's sole cost and expense, complete and accurate books and records in accordance with sound accounting principles, consistently applied.  All books and records shall be maintained at Borrower's principal place of business. Borrower shall permit Lender and any authorized representatives of Lender to have access to and to inspect and make copies of the books and records, any and all accounts, data and other documents of Borrower or relating to the Property, the Business, the operation, management, sale or maintenance thereof, and to discuss such records with Borrower, and its respective agents, accountants, employees and contractors, at all reasonable times upon the giving of reasonable notice of such intent.

(b)     **Documents Filed with the Bankruptcy Court**.  At the time any report (including, without limitation, monthly reports), projections, prospectus or other similar document is filed with the Bankruptcy Court, Borrower shall deliver to Lender copies of any such report, projection, prospectus or other similar document.  Borrower shall also promptly provide Lender with copies of all document or information provided by or on behalf of Borrower to any committee with respect to the Subchapter V Case.

5.7     **Prohibition on Sale or Encumbrance**.  Except as expressly permitted pursuant to the Financing Order, Borrower shall not, without Lender's prior written approval: (i) sell, transfer or convey or permit the sale, transfer or conveyance of any interest in Borrower Collateral (legal, equitable or possessory) other than in the ordinary course of Borrower's Business; (ii) suffer, permit or enter into any agreement for any sale or transfer Borrower Collateral other than in the ordinary course of Borrower's Business; (iii) in

any way encumber or dispose of or grant or suffer any security interest, lien or leasehold mortgage or other assignment (collateral or otherwise) of or in all or any portion of or interest in any Borrower Collateral (legal, equitable or possessory), whether senior or junior to the lien granted to Lender pursuant to the term hereof; or (iv) enter into, acquiesce in or otherwise permit any Encumbrance to be recorded or filed against any Borrower Collateral.

5.8    <u>**Payment of Impositions**</u>.  Borrower will pay before delinquent all taxes and assessments, general or special, and any and all levies, claims, charges, expenses and liens, ordinary or extraordinary, governmental or non-governmental, statutory or otherwise, due or to become due, that may be levied, assessed, made, imposed or charged on or against the any Borrower Collateral or any property used in connection therewith.

5.9    <u>**Use of the Borrower Collateral**</u>.  Borrower will:  (a) not do or suffer anything to be done which would depreciate or impair the value of any Borrower Collateral except to the extent normal depreciation occurs through the use of equipment on the Subcontracted Projects; (b)  keep the Business and Borrower Collateral in first class order, repair, operating condition and appearance, causing all necessary repairs, renewals, replacements, additions and improvements to be promptly made, and will not allow any of the Property to be misused, abused or wasted or to deteriorate; (c) not remove from the Property any fixtures or personal property, except as replaced by comparable items of equal or greater value; and (d) comply with all Laws.

5.10    <u>**Indemnification by Borrower**</u>.  Borrower will indemnify and hold harmless each Lender and Lender's officers, directors, managers, members, employees, agents, participants, successors or assigns and any Persons owned or controlled by, owning or controlling or under common control with Lender (each an "**Indemnified Party**") from and against, and reimburse each Indemnified Party on demand for, any and all Indemnified Matters.  WITHOUT LIMITATION, THE FOREGOING INDEMNITIES SHALL APPLY TO EACH INDEMNIFIED PERSON WITH RESPECT TO MATTERS WHICH IN WHOLE OR IN PART ARE CAUSED BY OR ARISE OUT OF, OR ARE CLAIMED TO BE CAUSED BY OR ARISE OUT OF, THE NEGLIGENCE OR STRICT LIABILITY OF SUCH (AND/OR ANY OTHER) INDEMNIFIED PERSON.  HOWEVER, SUCH INDEMNITIES SHALL NOT APPLY TO A PARTICULAR INDEMNIFIED PERSON TO THE EXTENT THAT THE SUBJECT OF THE INDEMNIFICATION IS CAUSED BY OR ARISES OUT OF THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF THAT INDEMNIFIED PERSON.  Nothing in this Section, elsewhere in the Agreement or in any other Loan Document shall limit or impair any rights or remedies of an Indemnified Party (including, without limitation, any rights of contribution or indemnification) against Borrower or any other Person under any other provision of this Agreement, any other Loan Document, any other agreement or any requirement of Law.  As used in this <u>Section 5.10</u>, "**Indemnified Matters**" means any and all claims, demands, liabilities (including strict liability imposed upon an Indemnified Party by third parties), losses, damages, causes of action, judgments, penalties, costs, expenses (expressly including without limitation, fees and expenses of attorneys and other professional consultants and experts, and costs of the investigation and defense of any claim, whether or not such claim is ultimately defeated) and the settlement of any claim or judgment (including all value paid or given in settlement) of every kind, known or unknown, foreseeable or unforeseeable, which may be imposed upon, asserted against or incurred or paid by an Indemnified Party at any time and from time to time, whenever imposed, asserted or incurred, because of, resulting from, in connection with, or arising out of any transaction, act, omission, event or circumstance in any way connected with the Property or with this Agreement or any other Loan Document arising or accruing prior to indefeasible payment in full of the Secured Obligations.  Indemnified Matters shall include, but not be limited to:  (1) liability imposed upon an Indemnified Party arising from any bodily injury or death or property damage to any third party occurring in or upon or in the vicinity of the Property through any cause whatsoever at any time on or before indefeasible payment in full of the Secured Obligations; (2) any act performed or omitted to be performed hereunder or under any other Loan Document by Borrower, any

breach by Borrower of any representation, warranty, covenant, agreement or condition contained in this Agreement or in any other Loan Document and not cured within any cure period applicable thereto, any default as defined herein or any claim under or with respect to any Lease; (3) any damage incurred by an Indemnified Party by reason of Borrower and such Indemnified Party being construed as having the relationship of joint venturers or incurred by reason of such Indemnified Party being deemed to have acted as agent or attorney-in-fact for Borrower; and (4) any brokerage commission or finder's fees.

### ARTICLE 6
### RESERVED

### ARTICLE 7
### RESERVED

### ARTICLE 8
### INSURANCE; CASUALTY; CONDEMNATION

**8.1**    **Required Insurance**.  Borrower will at all times maintain or cause to be maintained all policies of insurance reasonably required by Lender, including types of insurance, insureds, named insured, additional insureds, amounts of coverages and insurance carriers.  All policies of insurance shall be in amounts reasonably required by Lender, and shall be maintained with companies approved by Lender. Borrower shall promptly deliver to Lender a conforming copy of all such policies of insurance, certified as true and correct by the respective issuers thereof.

**8.2**    **Failure to Obtain Insurance**.  If Borrower shall fail to obtain or to maintain any of the policies of insurance required pursuant to Section 8.1 or to pay any premium relating thereto or to renew any such policies of insurance and to deliver evidence of such renewal to Lender no later than five (5) Business Days prior to the expiration of the existing policy, *then* Lender (without waiving or releasing any obligation or default by Borrower hereunder and whether or not such failure is an Event of Default hereunder, without notice to Borrower) may (but shall be under no obligation to do so) obtain and maintain such policies of insurance and pay such premiums and take any other action with respect thereto which Lender deems advisable.

**8.3**    **Notice of Casualty Loss; Repair of Damage**.  If any Property shall be destroyed or damaged in whole or in part, by fire or other casualty (including any casualty for which insurance was not obtained or obtainable) of any kind or nature, ordinary or extraordinary, foreseen or unforeseen, Borrower shall give to Lender and the insurance companies that have insured against such risks prompt notice of such loss.  The notice to Lender shall include a detailed description of the casualty, the extent and nature of the damage and Borrower's good faith estimate of the anticipated cost of restoration.  Borrower, at its own cost and expense, whether or not such damage or destruction shall have been insured, and whether or not insurance proceeds, if any, shall be sufficient for the purpose, shall promptly repair, alter, restore, replace and rebuild the same, at least to the extent of the value and as nearly as possible to the character of the Property existing immediately prior to such occurrence.

**8.4**    **Controlling Provisions**.  NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED IN THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT, IN THE EVENT OF AN EXPRESS, IRRECONCILABLE CONFLICT BETWEEN THE TERMS OF THIS AGREEMENT AND THE FINANCING ORDER, THE TERMS OF THE FINANCING ORDER SHALL BE DEEMED TO CONTROL; PROVIDED THAT TO THE EXTENT THAT THE TERMS OF THIS AGREEMENT AND FINANCING ORDER CAN BE READ, CONSTRUED AND ENFORCED IN A CONSISTENT MANNER, ALL PROVISIONS OF THIS AGREEMENT AND THE FINANCING ORDER SHALL BE GIVEN FULL FORE AND EFFECT.

**8.5**    **Lender's Costs**.  Lender is hereby authorized to reimburse itself from insurance proceeds and condemnation awards for all reasonable, out-of-pocket expenses incurred or paid by Lender in the adjustment, determination, or collection of insurance proceeds or condemnation awards and in connection with the restoration.

**ARTICLE 9**
**EVENT OF DEFAULT; REMEDIES**

**9.1**    **Events of Default**.  Notwithstanding the provisions of Section 362 of the Bankruptcy Code and without application or motion to the Bankruptcy Court or any notice to Borrower, any one or more of the following events shall constitute an event of default (each, an **"Event of Default"**) under this Agreement:

(a)    If Borrower fails to pay when due and payable, or when declared due and payable, all or any portion of the Secured Obligations (whether of principal, interest (including any interest which, but for the provisions of the Bankruptcy Code, would have accrued on such amounts), fees and charges due Lender, or other amounts constituting Secured Obligations);

(b)    Except as provided in any other Section of this Article 9, failure by Borrower to promptly perform any other obligation or observe any other condition, covenant, term, agreement or provision required to be performed or observed by Borrower under this Agreement or any other Loan Document within the earlier of (i) three (3) Business Days after notice thereof from Lender to Borrower, or (ii) ten (10) days after Borrower first becomes aware thereof;

(c)    Any inaccuracy or untruth in any representation, or warranty in any material respect contained in this Agreement or any of the other Loan Documents, or of any statement or certification as to facts delivered to Lender pursuant to any Loan Document;

(d)    The liens granted to Lender are not in full force and effect, shall be declared, by any court of competent jurisdiction, null, void or subordinated or this Agreement or any other Loan Document shall be contested by Borrower;

(e)    The Borrower shall file a plan of reorganization in the Bankruptcy Case prior to satisfaction of the Secured Obligations without the Lender's prior written approval;

(f)    Any motion or application is filed by or on behalf of Borrower for the consummation of the sale or other disposition of all or substantially all of its Property without the prior written consent of Lender;

(g)    Borrower is in violation of any provisions of the Financing Order (beyond any applicable cure period, if any);

(h)    the dismissal of the Bankruptcy Case or the conversion of the Bankruptcy Case into a case under Chapter 7 of the Bankruptcy Code;

(i)    the appointment of a trustee or an examiner with enlarged powers (beyond those set forth in §§ 1106(a)(3) and (4) of the Bankruptcy Code) relating to the operation of the business of Borrower without the prior written consent of the Lender (which consent may be withheld in its sole discretion), or Borrower apply for, consent to, or acquiesces in, any such appointment without the prior written consent of the Lender (which consent may be withheld in its sole discretion);

11

(j)        The Financing Order is stayed, reversed, vacated, amended or otherwise modified in any respect without the prior written consent of the Lender (which consent may be withheld in its sole discretion);

(k)        The Bankruptcy Court enters an order or judgment in the Bankruptcy Case modifying, limiting, subordinating or avoiding the priority of the Secured Indebtedness or the perfection, priority or validity of the Lender's liens;

(l)        The Bankruptcy Court does not approve the Sale Motion on or before the twenty-first (21st) day following the Petition Date, unless Lender agrees to a longer period;

(m)        To the extent required, project owners do not consent to the effectiveness of the Subcontracts on or before the Closing Date contemplated in the Sale Motion;

(n)        Borrower withdraws the Sale Motion without Lender's consent;

(o)        Lender notifies Borrower that it no longer intends to proceed with the Sale Motion;

(p)        Any motion or application is filed by or on behalf of Borrower in the Bankruptcy Case seeking the entry of an order, or an order is entered in the Bankruptcy Case, approving any subsequent debtor in possession facility for borrowed money or other extensions of credit unless such subsequent facility and such order expressly provide for the indefeasible payment and complete satisfaction in full in cash to the Lender of the Secured Indebtedness prior to, or concurrently with, any initial borrowings or other extensions of credit under such subsequent facility; and

(q)        If the Bankruptcy Court does not enter the final Financing Order on or before the twenty-first (21st) day following the Petition Date.

**9.2        Acceleration and Payment**.  Subject to the terms of the Financing Order, upon the occurrence of any Event of Default, Lender shall have the option to declare the unpaid principal balance under the Note and this Agreement, all interest thereon and all other Secured Obligations shall be immediately due and payable without notice or demand.  In the event of such acceleration and subject to the terms of the Financing Order, Borrower shall discharge its obligations to Lender by paying all sums due under the Note, this Agreement and the other Loan Documents, together with interest at the applicable Interest Rate and the Default Rate.

**9.3        Remedies**.  Subject to the terms of the Financing Order, upon the occurrence, and during the continuation, of an Event of Default, Lender (at its election but without notice of their election and without demand) may do any one or more of the following, and, except as provided in the Financing Order, without any application, motion or notice to or order from, the Bankruptcy Court, all of which are authorized by Borrower:

(a)        declare all or any portion of the Secured Obligations, whether evidenced by this Agreement, by any of the other Loan Documents, or otherwise, immediately due and payable;

(b)        cease advancing money or extending credit to or for the benefit of Borrower under this Agreement, under any of the Loan Documents, or under any other agreement between Borrower and Lender;

(c)  terminate this Agreement and any obligation of Lender to make additional Disbursements, without affecting any of the Lender's liens in the Borrower Collateral and without affecting the Secured Obligations;

(d)  foreclose the lien granted to Lender, and in any such foreclosure the amount payable to Lender shall be all Secured Obligations, including without limitation (i) interest at the Default Rate after an Event of Default, including any period after judgment has been entered, (ii) all fees, and (iii) the principal amount of the Loan;

(e)  exercise any of the rights and remedies contained in this Agreement or any of the other Loan Documents or exercise any other rights and remedies that Lender may have at law or in equity;

(f)  charge interest at the Default Rate;

(g)  exercise any right of offset granted by operation of law or pursuant to the terms of this Agreement;

(h)  exercise any rights of a secured Lender under the UCC and/or any other applicable Uniform Commercial Code;

(i)  to the extent permitted by Law, appropriate and apply to the payment of the Secured Obligations (whether or not then due and in any order of priority as may be selected by Lender in its discretion), any and all accounts or monies held in possession of Lender for the benefit of Borrower.

**9.4**    **Income**.  Subject to the terms of the Financing Order, upon the occurrence of an Event of Default, without demand by Lender, Borrower shall cause all operating income and other proceeds from the operation of the Business to be delivered to Lender, to be applied to the Secured Obligations, in such order of priority as Lender shall determine, in Lender's discretion.

**9.5**    **Consequential Damages**.  Notwithstanding anything to the contrary contained in this Agreement, Borrower shall not be liable to Lender and Lender shall not be liable to Borrower for consequential, punitive or exemplary damages.

**ARTICLE 10**
**MISCELLANEOUS**

**10.1**    **Rules of Construction.**  In this Agreement, unless a clear contrary intention appears:  (a) the singular number includes the plural number and vice versa, and reference to any gender includes each other gender; (b) the words "**herein**", "**hereof**" and "**hereunder**" and other words of similar import refer to this Agreement as a whole and not to any particular Article, Section or other subdivision; (c) reference to any Person (defined below) includes such Person's successors and assigns but, if applicable, only if such successors and assigns are permitted by this Agreement, and reference to a Person in a particular capacity excludes such Person in any other capacity or individually; provided that nothing in this clause is intended to authorize any assignment not otherwise permitted by this Agreement; (d) reference to any agreement, document, note or instrument means such agreement, document, note or instrument and all Modifications (defined below) thereto, thereof or therefor; (e) unless the context indicates otherwise, reference to any Article, Section, Schedule or Exhibit means such Article or Section hereof or such Schedule or Exhibit hereto; (f) the word "**including**" (and with correlative meaning "**include**") means including, without limiting the generality of any description preceding such term; (g) with respect to the determination of any period of time, the word "**from**" means "**from and including**" and the word "**to**" means "**to but excluding**"; (h) reference to any Law means such Law, as amended, modified, codified or reenacted, in whole or in part,

and in effect from time to time; (i) the Article and Section headings herein are for convenience only and shall not affect the construction or interpretation of this Agreement; (j) each reference herein that an event is an "**Event of Default**" shall be deemed to mean an immediate Event of Default, without any further obligation of notice or cure (all such rights to notice and cure having expired); (k) any reference herein to "**any Loan Document**" shall be deemed to mean "this Agreement, any mortgage, or any other Loan Document"; (l) any reference to the Loan, Property, the Borrower Collateral, or the Property shall be deemed to be a reference to the Property, the Borrower Collateral or the Business or any portion thereof; and (m) any reference to "**paid in full**" or "**satisfaction of the Secured Obligations**" or words to such effect, shall mean shall mean the payment in full of such liability or obligation of Borrower in cash or cash equivalents to Lender and the termination of any obligation on the part of Lender to make any loans or to afford any other financial accommodation to Borrower.  Payment shall not be deemed to be indefeasible payment in full unless such payment shall have been retained by Lender for a period of time in excess of all applicable preference or other similar periods under applicable Bankruptcy Code and insolvency or creditors' rights Laws.

> **10.2**   **Documents of Further Assurance**.  Borrower will, promptly on request of Lender (i) correct any defect, error or omission which may be discovered in the contents, execution or acknowledgment of this Agreement or any other Loan Document; (ii) execute, acknowledge, deliver, procure and record and/or file such further documents and do such further acts as may be necessary, desirable or proper to carry out more effectively the purposes of this Agreement and other Loan Documents, to more fully identify and subject to the liens and interests hereof any property intended to be covered hereby (including specifically, but without limitation, any renewals, additions, substitutions, replacements, or appurtenances to the Property) or as deemed advisable by Lender to protect the lien or the interest hereunder against the rights or interests of third person; (iii) provide such certificates, documents, reports, information, affidavits and other instruments and do such further acts as may be necessary, desirable or proper in the reasonable determination of Lender to enable Lender to comply with the requirements or requests of any agency having jurisdiction over Lender or any examiners of such agencies with respect to the indebtedness secured hereby, Borrower or the Property; and (iv) execute and deliver such further assignments, mortgages, financing statements, control agreements and such other instruments as Lender shall reasonably request to effect or maintain the perfection of any security interest granted to Lender in any Loan Document or to effect the transactions contemplated herein.

> **10.3**   **Severability**.  If any provision of any Loan Document or the application thereof to any Person or circumstance is held invalid or unenforceable, the remainder of such Loan Document and the application of such provision to other Persons or circumstances will not be affected thereby and the provisions of such Loan Document shall be severable in any such instance.

> **10.4**   **Lender's Right to Cure Defaults**.  If Borrower fails to perform any of its obligations under any Loan Document, or if any Event of Default shall occur hereunder, Lender may, but shall not be obligated to, perform such obligation or cure such default.

> **10.5**   **Waivers and Approvals By Lender.**

> > (a)   Waivers of Covenants by Lender.  No waiver of any provision of this Agreement or any other Loan Documents shall be effective unless set forth in writing signed by Lender, and any such waiver shall be effective only to the extent therein set forth.  Lender shall have the absolute right to require full and complete performance of Borrower's covenants and obligations and strict compliance with the provisions of this Agreement and the other Loan Documents by Borrower, and each other Loan Party.  If Lender elects to make any Disbursement hereunder at any time that Borrower has not satisfied all conditions precedent thereto, or if Lender fails to insist on strict performance of any covenant in any Loan Document, Lender shall make such election or determination, in Lender's discretion.  Lender may at any time thereafter

exercise any right or remedy provided in any Loan Document. Borrower hereby expressly acknowledges that failure to require strict compliance by Borrower with the provisions of this Agreement or any other Loan Document shall not constitute a waiver by Lender or establish a course of conduct, and that Lender shall not be deemed to have waived any right to insist on strict compliance with all provisions of the Loan Documents. Borrower hereby expressly waives any right to assert that it detrimentally relied upon such continued waiver or that Lender acted in bad faith in insisting upon strict compliance by Borrower with the provisions of any Loan Document or in exercising any right or remedy expressly granted to Lender hereunder. Receipt by Lender of any instrument or document shall not constitute or be deemed to be an approval thereof. Any approval required under any of the Loan Documents must be in writing signed by Lender and directed to Borrower.

(b)    <u>Standards of Approval</u>. Unless otherwise specifically provided herein, any and all discretion, determination, verification, waiver, consent or approval to be exercised, granted, provided or made by Lender herein, shall be exercised, made, granted or withheld, or continued to be exercised, made, granted or withheld, in Lender's sole, absolute and exclusive discretion. **LENDER SHALL HAVE NO DUTY TO BORROWER TO MAKE ANY DETERMINATION, TO PROVIDE ANY WAIVER OR CONSENT, OR TO EXERCISE ANY JUDGMENT OR DISCRETION UNDER THE TERMS OF THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT FOR THE BENEFIT OF BORROWER OR THE PROPERTY. FOR GREATER CERTAINTY, AND NOT IN LIMITATION OF THE FOREGOING, ANY REFERENCE IN THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT TO "LENDER'S APPROVAL" OR "LENDER'S CONSENT" OR "LENDER'S DISCRETION" OR WORDS OF SUCH IMPORT, SHALL BE DEEMED TO MEAN SUCH APPROVAL, CONSENT OR DISCRETION, IN LENDER'S SOLE, EXCLUSIVE AND ABSOLUTE DISCRETION, UNLESS SUCH PROVISION SHALL EXPRESSLY PROVIDE THAT SUCH DISCRETION, CONSENT OR APPROVAL SHALL NOT BE UNREASONABLY WITHHELD. IN THE EVENT THAT BORROWER REQUESTS APPROVAL OR CONSENT BY LENDER, LENDER'S CONSENT OR APPROVAL SHALL BE DEEMED GIVEN UNLESS LENDER OBJECTS, REQUESTS ADDITIONAL INFORMATION OR REQUEST ADDITIONAL TIME WITHIN THREE (3) BUSINESS DAYS AFTER SUCH REQUEST IS MADE.**

**10.6    <u>Notices</u>**. Except for approvals deemed given by Lender in accordance with this Agreement, any and all notices, demands, requests, approvals, consents or other communication required or permitted to be given in connection with this Agreement shall be deemed adequately given only if in writing and addressed to the party for whom such notices are intended at the address set forth below. All notices shall be sent by nationally recognized overnight messenger service, or first class certified mail, postage prepaid, return receipt requested or by any means of electronic delivery. A written notice shall be deemed to have been given to the recipient party on the earlier of: (a) the date it shall be delivered to the address required by this Agreement; (b) the date delivery shall have been refused at the address required by this Agreement; or (c) the date as of which the delivery or postal service shall have indicated such notice to be undeliverable at the address required by this Agreement. Any and all notices referred to in this Agreement, or which either party desires to give to the other, shall be addressed as follows:

To Lender:

Vollers Excavating and Construction, Inc.
3311 US-22
Branchburg, NJ 08876
Attention: Brendan Murray
Email: bmurray@vollers.cc

with a copy to:

**TRIF & MODUGNO LLC**
89 Headquarters Plaza
North Tower, Suite 1201
Morristown, New Jersey 07960
Attention: Louis A. Modugno, Esq.
Email: lmodugno@tm-firm.com

To Borrower:

Assuncao Bros., Inc.
29 Wood Street
Edison, NJ 08820
Attention: Martin Assuncao
Email: marty@assuncaobrothers.com

with a copy to:

**FOX ROTHSCHILD LLP**
49 Market St.
Morristown, NJ 07960
Attention: Joseph J. DiPasquale, Esq.
jdipasquale@foxrothschild.com

      **10.7**   **Successors and Assigns**.  The rights, powers and remedies of Lender under this Agreement shall inure to the benefit of Lender, its participants, successors and assigns.  The rights and obligations of Borrower under this Agreement may not be assigned without the prior approval of Lender and any such purported assignment by Borrower shall be null and void.  Lender shall have the right to assign, transfer, sell or convey its interest in the Note, this Agreement or any other Loan Documents, or any part thereof (including, without limitation, participations therein) without the consent of or notice to Borrower.

      **10.8**   **Time of Essence**.  Time is of the essence with respect to the payment of all amounts due Lender under this Agreement and the other Loan Documents and performance and observance by Borrower of each covenant, agreement, provision and term of this Agreement and the other Loan Documents.

      **10.9**   **Counterparts, Fax**.  This Agreement may be executed in counterparts, and all said counterparts when taken together shall constitute one and the same Agreement and the parties hereto are hereby authorized to collate such counterparts into one original.  For purposes of negotiating and finalizing this Agreement (including any subsequent amendments thereto), any signed document transmitted electronically shall be treated in all manner and respects as an original document.

      **10.10**   **Representation By Counsel**.  Borrower hereby represents that it has been represented by competent counsel of its choice in the negotiation and execution of this Agreement and the other Loan Documents; that it has read and fully understood the terms hereof; that Borrower and its counsel have been afforded an opportunity to review, negotiate and modify the terms of this Agreement, and that it intends to be bound hereby.  In accordance with the foregoing, the general rule of construction to the effect that any ambiguities in a contract are to be resolved against the party drafting the contract shall not be employed in the construction and interpretation of this Agreement or any other Loan Document.

**10.11    No Third Party Beneficiaries; Relationship of Borrower and Lender**. This Agreement and the other Loan Documents are solely for the benefit of Lender and Borrower and their respective permitted successors and assigns. Nothing contained herein or therein shall be deemed to confer upon any other Person any right to insist on or to enforce the performance or observance of any of the obligations, terms or covenants contained herein or therein.

**10.12    Waivers By Borrower**. Except as required by Law or as expressly required by any other provision of this Agreement, Borrower expressly waives: (a) notice of the existence, creation, payment or nonpayment of the Loan or any Modification, extension, or amendment thereof; (b) any failure by Lender to inform Borrower of any facts Lender may now or hereafter know about Borrower, the Property or any other Borrower Collateral, the Loan or the transactions contemplated by the Loan Documents; (c) notice of any and all waivers, defaults, forbearances by Lender under the terms of this Agreement or failure of Borrower to comply with the terms and conditions of this Agreement or the other Loan Documents; (d) presentment, demand, protest, notice of protest, notice of presentment, maturity, release, compromise, settlement, extension or renewal of the Loan or any obligation under the Loan Documents, and hereby ratifies whatever Lender may do in such regard; (e) notice of maturity, release, compromise, settlement, extension or renewal of any or all commercial paper, accounts, contract rights, documents, instruments, chattel paper and guaranties at any time held by Lender with respect to any transaction contemplated in the Loan Documents; (f) the benefit of all valuation, appraisement, extension and exemption laws; (g) any and all notices or demands which Borrower might be entitled to with respect to this Agreement, the Note or any other Loan Document solely by virtue of any applicable statute or Law.

**10.13    Governing Law.**

(a)    Governing Law. This Agreement shall be governed by and construed in accordance with the federal laws of the United States of America and internal laws of the State of New Jersey applicable to contracts made and to be performed in such state (without regard to the principle of conflicts of law applicable under New Jersey law).

(b)    Jury Waiver. TO THE MAXIMUM EXTENT PERMITTED BY LAW, BORROWER AND LENDER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT TO A TRIAL BY JURY IN RESPECT OF ANY ACTION, CAUSE OF ACTION, CLAIM, DEMAND OR PROCEEDING ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT, OR IN ANY WAY CONNECTED WITH, RELATED TO OR INCIDENTAL TO THE DEALINGS OF BORROWER AND LENDER WITH RESPECT TO THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT, OR THE TRANSACTIONS RELATED HERETO, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER ORAL OR WRITTEN) OR ACTIONS OF EITHER PARTY, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT, TORT, OR OTHERWISE. TO THE MAXIMUM EXTENT PERMITTED BY LAW, BORROWER AND LENDER HEREBY AGREE THAT ANY SUCH ACTION, CAUSE OF ACTION, CLAIM, DEMAND OR PROCEEDING SHALL BE DECIDED BY A TRIAL COURT SITTING WITHOUT A JURY AND THAT BORROWER OR LENDER MAY FILE AN EXECUTED COPY OF THIS AGREEMENT WITH ANY COURT OR OTHER TRIBUNAL AS WRITTEN EVIDENCE OF THE CONSENT OF BORROWER AND LENDER TO THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY. NEITHER BORROWER NOR LENDER SHALL SEEK TO CONSOLIDATE, BY COUNTERCLAIM OR OTHERWISE, ANY ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. THIS JURY WAIVER APPLIES REGARDLESS OF WHETHER ANY ACTION OR CAUSE OF ACTION IS FILED OR INITIATED IN ANY STATE OR FEDERAL COURT.

The remainder of this page is intentionally left blank.

IN WITNESS WHEREOF, the undersigned parties have executed this Senior Secured, Super-Priority Debtor-In-Possession Loan and Security Agreement.

**BORROWER:**

**Assuncao Bros., Inc.**, a New Jersey corporation

By: _____

Name: Martin Assuncao

Title: President

**LENDER:**

**Vollers Excavating and Construction, Inc.**, a New Jersey corporation

By: _____

Name: Brendan Murray

Title: President

**EXHIBIT A**

**Financing Order**

136441681

$_____                                            Dated as of August__, 2022
Edison, New Jersey


# PROMISSORY NOTE
ASSUNCAO BROS., INC.


**FOR VALUE RECEIVED Assuncao Bros., Inc.**, a New Jersey corporation ("**Borrower**"), hereby, promise to pay to the order of **Vollers Excavating and Construction, Inc..**, a New Jersey Corporation; ("**Lender**"), $_____ or so much as may now or hereafter be disbursed by Lender to or for the benefit of Borrower, together with interest, costs, fees and expenses.

This Note is Borrower's Note issued pursuant to and entitled to the benefits of the terms of that certain Senior Secured, Super-Priority Debtor-In-Possession Loan and Security Agreement dated  even date herewith, by and between Borrower and Lender (said agreement, as it may hereafter be amended, extended, restated, supplemented, replaced or otherwise modified from time to time, being referred to collectively herein as the "**Loan Agreement**") to which reference is hereby made for a more complete statement of the terms and conditions under which the Loan evidenced hereby was made and are to be repaid.  Capitalized terms used herein and not otherwise defined herein shall have the meaning set forth in the Loan Agreement, which definitions are hereby incorporated by reference.

Borrower hereby promises to pay principal and interest at the times, at the rates and in the manner set forth in the Loan Agreement.  The unpaid principal balance plus accrued but unpaid interest shall be due and payable on the Maturity Date, unless such date is accelerated or extended pursuant to the terms of the Loan Agreement. This Note may be prepaid only in accordance with the Loan Agreement. Payment of this Note may be accelerated in accordance with the provisions of the Loan Agreement.

Except as expressly provided in this Note or the other Loan Documents, Borrower and any endorsers of this Note hereby irrevocably waive presentment, demand, protest, notice of protest, notice of presentment, default, notice of non-payment, notice of maturity, notice of release, notice of compromise, notice of settlement, notice of extension or renewal, and all other notices of every kind, and, to the full extent permitted by law, the right to plead any statute of limitations as a defense to any demand hereunder.  Except as expressly provided in this Note or the other Loan Documents, to the maximum extent permitted by law, Borrower hereby waives any and all notices or demands to which Borrower might be entitled with respect to this Note by virtue of any applicable statute or law.

Borrower, for itself and for its successors, transferees and assigns, hereby irrevocably:  (i) agrees that this Note and any or all payments coming due hereunder or under any of the other Loan Documents may be extended or renewed from time to time in the sole discretion of Lender without in any way affecting or diminishing Borrower's liability hereunder and Borrower hereby ratifies whatever Lender may do in such regard; and (ii) waives any rights, remedies or defenses arising at law or in equity relating to guarantees or suretyships.

THE PROVISIONS OF THIS SECTION SHALL GOVERN AND CONTROL OVER ANY IRRECONCILABLY INCONSISTENT PROVISION CONTAINED IN THIS NOTE, IN THE LOAN AGREEMENT OR IN ANY OTHER LOAN DOCUMENT.  Lender shall never be entitled to receive, collect, or apply as interest on the Secured Obligations (for purposes of this Section the word "interest" shall be deemed to include any sums treated as interest under applicable Law governing matters of usury and unlawful interest), any amount in excess of the Highest Lawful Rate (hereinafter defined) and, in the event Lender ever receives, collects, or applies as interest any such excess, such amount which would be excessive interest shall be deemed a partial

prepayment of principal and shall be treated hereunder as such.  If the principal of this Note is paid in full, any remaining excess shall be promptly paid to Borrower, without interest.  In determining whether or not the interest paid or payable, under any specific contingency, exceeds the Highest Lawful Rate, Borrower and Lender shall, to the maximum extent permitted under applicable Law, (i) characterize any non-principal payment as an expense, fee or premium rather than as interest, (ii) exclude voluntary prepayments and the effects thereof; and (iii) spread the total amount of interest throughout the entire contemplated term of this Note; <u>provided that</u> if this Note is paid and performed in full prior to the end of the full contemplated term hereof, and if the interest received for the actual period of existence hereof exceeds the Highest Lawful Rate, Lender shall refund to Borrower the amount of such excess and, in such event, Lender shall not be subject to any penalties provided by any Law for contracting for, charging or receiving interest in excess of the Highest Lawful Rate.  **"Highest Lawful Rate"** shall mean the maximum rate of interest which Lender is allowed to contract for, charge, take, reserve or receive under applicable Law after taking into account, to the extent required by applicable Law, any and all relevant payments or charges hereunder.

The provisions of the Loan Agreement are hereby incorporated by reference and shall be binding upon Borrower and Lender as if fully set forth herein.

*The remainder of this page has been intentionally left blank.*

**IN WITNESS WHEREOF,** Borrower has caused this Promissory Note to be duly executed and delivered and dated as of the date first written above.

**Assuncao Bros., Inc., a New Jersey corporation**

By: _____

Name: _____

Title: _____