**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-1(b)

**FOX ROTHSCHILD LLP**
49 Market Street
Morristown, NJ 07960
Joseph J. DiPasquale, Esq.
Michael R. Herz, Esq.
Joseph A. Caneco, Esq.
jdipasquale@foxrothschild.com
mherz@foxrothschild.com
jcaneco@foxrothschild.com
Telephone: (973) 992-4800
Facsimile: (973) 992-9125

*Proposed Counsel to the Debtor*
*and Debtor in Possession*

In Re:

ASSUNCAO BROS., INC.,

           Debtor.

Chapter 11 (Subchapter V)

Case No. 22-16159-CMG

Judge: Hon. Christine M. Gravelle

Hearing Date: September 6, 2022
Hearing Time: 12:00 p.m.

**MEMORANDUM OF LAW IN SUPPORT OF DEBTOR'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING REJECTION OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES EFFECTIVE AS OF THE PETITION DATE**

Assuncao Bros., Inc. (the "Debtor"), the debtor and debtor-in-possession in the above-captioned chapter 11, subchapter v case (the "Subchapter V Case"), by and through its proposed attorneys, Fox Rothschild LLP, hereby submits this memorandum of law in support of its motion (the "Motion") for entry of an order authorizing the rejection of certain executory contracts and unexpired leases pursuant to 11 U.S.C. §§ 105 and 365 and Fed. R. Bankr. P. 6004 and 6006, effective as of the Petition Date (defined below), and respectfully states as follows:

136778825.1

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 1334 and 157, and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, dated September 18, 2021 (Simandle, C.J.). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue of the Debtor's Subchapter V Case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought herein are sections 105(a) and 365(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**BACKGROUND**

4. The facts set forth in the *Declaration of Martin Assuncao in Support of Voluntary Petition and First Day Motions* (the "First Day Declaration") [D.I. 8] and the *Certification of Martin Assuncao in Support of Debtor's Motion for Entry of an Order Authorizing Rejection of Certain Executory Contracts and Unexpired Leases as of the Petition Date* (the "Assuncao Rejection Certification") submitted herewith, are incorporated herein by reference.

5. On August 3, 2022 (the "Petition Date"), the Debtor commenced this Subchapter V Case by filing a voluntary petition for relief under subchapter v of chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its property as a debtor-in-possession in accordance with section 1184 of the Bankruptcy Code. No trustee or examiner has been appointed in the Subchapter V Case.

136778825.1

6. As set forth in greater detail in the First Day Declaration, the Debtor is a contractor specializing in concrete services, including, but not limited to, curb, sidewalk, bridge, barriers, and slabs. The Debtor is a family-owned business that has been operating since 1958.

7. The Debtor has contracts to work on both bonded and non-bonded projects throughout the State of New Jersey. As of the Petition Date, the Debtor was contracted to provide concrete-related services for nineteen (19) unbonded projects (the "Non-Bonded Projects") and fourteen (14) bonded projects (the "Bonded Projects" and together with the Non-Bonded Projects, the "Active Projects").

8. On August 5, 2022, the Debtor filed a *Motion for Entry of Order (I) Authorizing the Sale of Certain of the Debtor's Assets to Vollers Excavating and Construction, Inc., (II) Approving Settlement, (III) Authorizing Debtor to Enter Into Subcontracts with Vollers for Certain Non-Bonded Projects, and (IV) Authorizing the Debtor to Assume and Assign Certain Executory Contracts and Unexpired Leases* (the "Sale Motion") [D.I. 25]. Through the Sale Motion, the Debtor, among other things, seeks authority to sell certain assets to Vollers Excavating and Construction, Inc. ("Vollers"), and enter into subcontracts with Vollers whereby Vollers would complete twelve (12) of the Debtor's Non-Bonded Projects (the "Subcontracted Projects").[1] A hearing on the Sale Motion is scheduled for August 22, 2022.[2]

9. The Debtor lacks the resources to continue work on the remaining Non-Bonded Projects (the "Rejected Ongoing Projects") and no third parties have expressed interest to the

---

[1] A list of the Subcontracted Projects is included in Schedule 1.01(a) annexed to the Asset Purchase Agreement attached as Exhibit A to the Sale Motion.

[2] In addition to the proposed transactions in the Sale Motion, Vollers has also agreed to provide the Debtor with post-petition financing, which the Court has approved on an interim basis. *See Interim Order (I) Authorizing (A) Post-Petition Financing and (B) Use of Cash Collateral and Affording Adequate Protection; (II) Modifying the Automatic Stay; and (III) Scheduling a Final Hearing* entered on August 4, 2022 [D.I. 23].

136778825.1

Debtor in continuing those projects on a subcontractor basis or taking assignment of the underlying contracts. Since the Debtor will not derive any further financial benefit from the Rejected Ongoing Projects, and has not derived any benefit on those projects since the Petition Date, the Debtor has determined in its business judgment that rejection of the contracts for the Rejected Ongoing Projects is appropriate and in the best interests of the estate. The Debtor is also a party to certain contracts for projects which the Debtor recently completed its work prior to the Petition Date (the "Rejected Completed Projects"). Out of an abundance of caution, the Debtor has determined to reject the contracts for the Rejected Completed Projects, particularly given that the Debtor will not be performing any further services in connection with those contracts. Additionally, the Debtor is a party to certain leases for vehicles and equipment (the "Rejected Equipment Leases") that the Debtor has no use for going forward. A list of the executory contracts and unexpired leases to be rejected, including with respect to the Rejected Ongoing Projects, the Rejected Completed Projects, and the Rejected Equipment Leases (collectively, the "Rejected Contracts"), sorted alphabetically by counterparty, is attached as **Exhibit A** to the Assuncao Rejection Certification.[3]

10.    The Debtor believes rejecting the Rejected Contracts effective as of the Petition Date is appropriate and in the best interest of the estate, as doing so will minimize any ongoing obligations and liabilities that might accrue to the estate, thereby preserving value for the estate.

**RELIEF REQUESTED**

11.    By this Motion, the Debtor seeks entry of an order pursuant to sections 105(a) and 365(a) of the Bankruptcy Code, and Bankruptcy Rules 6004 and 6006, authorizing the Debtor to reject the Rejected Contracts effective as of the Petition Date.

---

[3] With respect to the Bonded Projects, the Debtor is negotiating the terms of rejection of the contracts for those projects with its surety, NGM Insurance Company.

4

  **A. Rejection of the Rejected Contracts Is an Exercise of the Debtor's Sound Business Judgment**

  12. Section 365(a) of the Bankruptcy Code provides, in relevant part, that a debtor-in-possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).

  13. The Debtor's rejection of an executory contract or unexpired lease is governed by the "business judgment" standard. *See, Sharon Steel Corp. v. Nat'l. Fuel Gas Distr. Corp.*, 872 F.2d 36, 40 (3d Cir. 1989); *see also*, *In re HQ Global Holdings, Inc.*, 290 B.R. 507, 513 (Bankr. D. Del. 2003) (stating a debtor's decision to reject an executory contract is governed by the business judgement standard and can only be overturned if the decision was the "product of bad faith, whim, or caprice").

  14. Courts approve the rejection of executory contracts and unexpired leases under section 365 of the Bankruptcy Code upon finding that the Debtor has exercised its sound business judgment in determining rejection is in the best interests of the Debtor, its creditors and parties-in-interest. *See, e.g.*, *In re Bullet Jet Charter, Inc.*, 177 B.R. at 601 (Bankr. N.D. Ill. 1995) (Under the business judgment rule, "courts should approve a debtor's decision to reject...where [the debtor] demonstrates that rejection will benefit the debtor's estate or reorganization efforts.") (citation omitted); *see also Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (holding that absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course"). If a debtor's business judgment has been reasonably exercised, a court should approve the rejection of an executory contract or unexpired lease. *See, e.g.*, *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984).

5

15. Additionally, pursuant to section 105(a) of the Bankruptcy Code, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the [Bankruptcy Code]." 11 U.S.C. § 105(a). Courts have regularly observed section 105(a) to be a broad provision, endowing bankruptcy courts with equitable powers to craft "necessary and appropriate" remedies that further the aims of the Bankruptcy Code. *See In re United Steel Enterprises*, 2006 WL 3544583, at *6 (D.N.J. Dec. 8, 2006); *In re BWP Gas, LLC*, 354 B.R. 701, 707 (E.D.Pa. 2006); *McHugh v. Otlowski*, 2011 WL 1833370, at *3 (Bankr. D.N.J. May 11, 2011). In this vein, "courts of bankruptcy are essentially courts of equity, and their proceedings inherently proceedings in equity." *In re Combustion Engineering, Inc.*, 391 F.3d 190, 236 (3d Cir. 2004).

16. The Debtor and its advisors have assessed the costs and benefits of each of the Rejected Contracts, and the Debtor has determined in its business judgment that rejection of each of the Rejected Contracts is in the best interests of the Debtor, its estate, and the interested parties. As noted, the Rejected Contracts including (i) contracts for non-bonded projects that the Debtor will not be continuing and will not be assigning to Vollers through the Sale Motion; (ii) contracts for projects for which the Debtor has completed its work; and (iii) leases for certain vehicles and equipment that the Debtor will not be using going forward. The Debtor has no intention of continuing to perform under the Rejected Contracts, and thus rejection of the Rejected Contracts will minimize any ongoing obligations or liability that might accrue to the estate, thereby preserving value for the estate. Further, maintaining possession of the vehicles and equipment subject to the Rejected Equipment Leases would result in administrative costs to the estate for vehicles and equipment that the Debtor will not even be using. The rejection of the Rejected Contracts will therefore reduce costs of administration.

136778825.1

17. Based on the foregoing, the Court should authorize the rejection of the Rejected Contracts as being within the sound exercise of the Debtor's business judgement and in the best interests of the Debtor's estate.

> **B.  The Court Should Authorize the Rejection of the Rejected Contracts Effective as of the Rejection Date**

18. The Debtor respectfully submits that it is appropriate for the Court to order the Rejected Contracts be rejected effective as of the Petition Date.  While section 365 of the Bankruptcy Code does not specifically address whether courts may order rejection to be effective retroactively, courts within the Third Circuit and elsewhere have held that bankruptcy courts may exercise equitable powers in granting such a retroactive order when doing so promotes the purposes of section 365(a).  *See, e.g., In re Philadelphia Newspapers, LLC*, 424 B.R. 178, 185 (Bankr. E. D. Pa. 2010) (granting retroactive rejection where equitable considerations did not weigh against it); *In re Visteon Corp.*, No. 09-11786 (CSS) (Bankr. D. Del. June 23, 2009) (granting debtors' motion for rejection of certain leases retroactive to the petition date); *In re Chi-Chi's, Inc.*, 305 B.R. 396,3 399 (Bankr. D. Del. 2004) (stating that "the court's power of retroactive relief is derived from the bankruptcy court's equitable powers so long as it promotes the purposes of section 365(a)"); *TW, Inc. v. Angelastro (In re TW, Inc.*), No. 03-10785, 2004 WL 115521, at * 2 (D. Del. Jan. 14, 2004) (holding that bankruptcy courts may approve rejection of nonresidential lease retroactive to the motion filing date "when principles of equity so dictate"); *see also In re At Home Corp.*, 392 F.3d 1064, 1065-66 (9th Cir. 2004) *cert. denied sub nom.*, 546 U.S. 814 (2005) (holding that a bankruptcy court may retroactively approve the rejection of an unexpired lease); *In re Thinking Machines, Corp.*, 67 F.3d 1021, 1028 (1st Cir. 1995) ("[R]ejection under 365(a) does not take effect until judicial approval is secured, but the approving court has the equitable power, in suitable cases, to order a rejection to operate retroactively."); *In re GCP CT School*

*Acquisition, LLC*, 429 B.R. 817, 831-33 (1st Cir. B.A.P. 2010) (holding that the bankruptcy court properly applied equitable principles in approving the trustee's rejection of the nonresidential real property lease retroactively); *In re Sky Ventures, LLC*, 523 B.R. 163, 167-170 (Bankr. D. Minn. 2014) (approving the rejection of the unexpired lease of nonresidential real property retroactive to the petition date); *In re CCI Wireless, LLC*, 297 B.R. 133, 138 (D. Colo. 2003) (noting that section 365 "does not prohibit the bankruptcy court from allowing the rejection of leases to apply retroactively"); *In re Jamesway Corp.*, 179 B.R. 33, 37 (S.D.N.Y. 1995) (observing that section 365 does not include "restrictions as to the manner in which the court can approve rejection"); *BP Energy Co. v. Bethlehem Steel Corp.*, No. 02 Civ. 6419, 2002 WL 31548723, at *3 *S.D.N.Y. Nov. 15, 2002) ("[W]e cannot conclude . . . that a bankruptcy court's assignment of a retroactive rejection date falls outside of its authority when the balance of the equities favors this solution.").

19.    Here, the balance of the equities favors rejection of the Rejected Contracts *nunc pro tunc* to the Petition Date. As noted, the Debtor no longer has any need to continue performance under the Rejected Contracts and will and has not derived any benefit under any of the Rejected Contracts since the Petition Date. The Debtor has also promptly requested the relief sought herein following the Petition Date, thereby minimizing any prejudice to the counterparties to the Rejected Contracts.[4] Given the promptness of the filing of the Motion and that the Debtor has not derived any benefit from any of the Rejected Contracts since the Petition Date, the Debtor respectfully submits that rejection of the Rejected Contracts effective as of the Petition Date is appropriate.

    **C.**    **The Motion Complies With Bankruptcy Rule 6006**

---

[4] The Debtor would have filed this Motion even sooner, but there were ongoing discussions with Vollers regarding which Non-Bonded Projects it would continue for the Debtor as a subcontractor in connection with the Sale Motion, and what vehicles and equipment would be needed in connection therewith.

8

136778825.1

20. Under Bankruptcy Rule 6006(e), a debtor may join requests for authority to reject multiple executory contracts or unexpired leases in one motion, subject to Bankruptcy Rule 6006(f). Fed. R. Bankr. P. 6006(e). Bankruptcy Rule 6006(f) sets forth six requirements that motions to assume or reject multiple leases must meet. These requirements are procedural in nature. A motion to assume or reject multiple executory contracts or unexpired leases that are not between the same parties shall:

(1) state in a conspicuous place that parties receiving the omnibus motion should locate their names and their contracts or leases listed in the motion;

(2) list parties alphabetically and identify the corresponding contract or lease;

(3) specify the terms, including the curing of defaults, for each requested assumption or assignment;

(4) specify the terms, including the identity of each assignee and the adequate assurance of future performance by each assignee, for each requested assignment;

(5) be numbered consecutively with other omnibus motions to assume, assign, or reject executory contracts or unexpired leases; and

(6) be limited to no more than 100 executory contracts or unexpired leases.

Fed. R. Bankr. P. 6006(f).

21. The clear purpose of Rule 6006(f) is to protect the due process rights of counterparties to leases and contracts. Counterparties must be able to locate their leases and contracts and readily determine whether their leases and contracts are being rejected. The Debtor has complied with all applicable procedural requirements of Bankruptcy Rule 6006(f). The list of Rejected Contracts annexed as Exhibit A to the Assuncao Rejection Certification meets all procedural requirements of Bankruptcy Rule 6006(f) affording counterparties all necessary protections of due process, and the Motion conspicuously in bold capitalized text in the Notice of

9

Motion submitted herewith informs the counterparties of the Rejected Contracts to refer to Exhibit A of the Assuncao Rejection Certification for a list of the Rejected Contracts.

### WAIVER OF BANKRUPTCY RULE 6004(h)

22. The Debtor requests that the Court waive the requirements under Bankruptcy Rule 6004(h), so that the rejection of the Rejected Contracts effective as if the Petition Date occurs immediately rather than being subject to the fourteen (14)-day waiting period outlined in Bankruptcy Rule 6004(h).

23. Bankruptcy Rule 6004(h) provides that an order authorizing the "use, sale, or lease of property … is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).

24. The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented. *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h). Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day stay period, COLLIER suggests that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 COLLIER ON BANKRUPTCY, ¶ [6004.11], 6004-18 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). COLLIER further provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to seek a stay, unless the court determines that the need to proceed sooner outweighs the interests of the objecting party. *Id.*

25. Therefore, the Debtor hereby requests that the Court waive the 14-day stay period under Bankruptcy Rule 6004(h).

136778825.1

**RESERVATION OF RIGHTS**

26.     Nothing contained herein is intended or shall be construed as (a) an admission as to the validity of any claim against the Debtor; (b) a waiver of the Debtor's or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtor; (c) a waiver of any claims or causes of action which may exist against any creditor or interest holder; or (d) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtor and any third party under section 365 of the Bankruptcy Code, except to the extent the Court enters an order granting the relief requested I the Motion with respect to the Rejected Contracts listed in Exhibit A to the Assuncao Rejection Certification.

**NO PRIOR REQUEST**

27.     No previous request for the relief sought herein has been made by the Debtor to this Court or any other court.

**NOTICE**

28.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee for Region 3; (ii) the holders of the twenty (20) largest unsecured claims against the Debtor; (iii) counterparties to the Rejected Contracts; (iv) counsel for secured creditor Manasquan Bank; (v) the United States Small Business Administration; (vi) counsel for NGM Insurance Company; (vii) the Internal Revenue Service; (viii) the United States Attorney's Office for the District of New Jersey; and (ix) those persons who have formally appeared in Subchapter V Case and requested service pursuant to Bankruptcy Rule 2002. Notice of this Motion and any order with respect hereto will be served in accordance with Local Rule 9013-5(b), (c), and (f). In light

136778825.1

of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary under the circumstances

## CONCLUSION

WHEREFORE, based on the foregoing, the Debtor respectfully requests that the Court enter an (i) order authorizing the Debtor to reject the Rejected Contracts pursuant to section 365(a) of the Bankruptcy Code effective as of the Petition Date; (ii) waiving the fourteen (14) day stay provided for in Bankruptcy Rule 6004(h); and (iii) granting the Debtor such other and further relief as is just and proper.

Dated: August 16, 2022    Respectfully submitted,

**FOX ROTHSCHILD LLP**
*Proposed Counsel for the Debtor and Debtor-in-Possession*

By: */s/Joseph J. DiPasquale*
   Joseph J. DiPasquale, Esq.
   Michael R. Herz. Esq.
   Joseph A. Caneco, Esq.

136778825.1