UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
UNITED STATES TRUSTEE, REGIONS 3 & 9
Maggie H. McGee, Esq
One Newark Center, Suite 2100
Newark, NJ  07102
Telephone: (973) 645-3014
Email:  Maggie.mcgee@usdoj.gov

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | : Case No. 22-16159 CMG |
| | : |
| Assuncao Bros., Inc., | : Chapter 11   (subchapter V) |
| | : |
| | : The Hon. Christine M. Gravelle |
| Debtor. | : |
| | : Hearing Date: 8/22/2022 at 10:00 a.m. |

**OBJECTION OF THE UNITED STATES TRUSTEE TO DEBTOR'S MOTION FOR ENTRY OF ORDER (I) AUTHORIZING THE SALE OF CERTAIN OF THE DEBTOR'S ASSETS TO VOLLERS EXCAVATING AND CONSTRUCTION, INC., (II) APPROVING SETTLEMENT, (III) AUTHORIZING DEBTOR TO ENTER INTO SUBCONTRACTS WITH VOLLERS FOR CERTAIN NON-BONDED PROJECTS, AND (IV) AUTHORIZING DEBTOR TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND OBJECTION TO ENTRY OF FINAL ORDER ON DEBTOR'S MOTION AUTHORIZING POST-PETITION FINANCING AND USE OF CASH COLLATERAL**

Andrew R. Vara, United States Trustee for Regions 3 & 9 ("U.S. Trustee"), by and through his undersigned counsel, hereby objects to the Debtor's Motion For Entry Of Order (I) Authorizing The Sale Of Certain Of The Debtor's Assets To Vollers Excavating And Construction, Inc., (II) Approving Settlement, (III) Authorizing Debtor To Enter Into Subcontracts With Vollers For Certain Non-Bonded Projects, And (IV) Authorizing Debtor To Assume And Assign Certain Executory Contracts And Unexpired Leases ("Sale Motion") And Objection To Entry Of Final Order On Debtor's Motion Authorizing Post-Petition Financing, And Use Of Cash Collateral ("Financing Motion"), and in support thereof, states as follows:

1

## INTRODUCTION

1. This Court has jurisdiction to hear and determine this Objection.

2. Pursuant to 28 U.S.C. § 586(a)(3), the U.S. Trustee is charged with administrative oversight of the bankruptcy system in this District. Such oversight is part of the U.S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Systems, Inc. (In re Columbia Gas Systems, Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

3. Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on the issues raised by this Objection.

## BACKGROUND AND RELEVANT FACTS

**A.    The Bankruptcy Case.**

4. On August 3, 2022 (the "Petition Date"), Assuncao Bros, Inc. (the "Debtor") filed a voluntary petition for relief under Chapter 11, subchapter V, of title 11, United States Code. ECF No. 1.

5. The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6. On August 8, 2022, the U.S. Trustee filed the Notice of Appointment of Scott S. Rever as the subchapter V trustee. ECF No. 41.

7. The Debtor operates a masonry business specializing in curb, sidewalk, bridge, barriers, and slabs. ECF No. 8 at ¶ 5 and 6.

8. As part of its first day motions, the Debtor sought and obtained an extension of time to file its schedules and statement of financial affairs until September 2, 2022.

9. Pursuant to the Declaration of Martin Assuncao in Support of Voluntary Petition and First Day Motions ("First Day Certification"), the Debtor has total assets worth approximately $4.3 million, including construction equipment and vehicles and accounts receivables on executory contracts. ECF No. 8 at ¶ 13. The Debtor has liabilities totaling $7.6 million. *Id.* According to the First Day Certification, Debtor's assets consists of vehicles and construction equipment with an estimated liquidation value of $2.15 million, accounts receivable of approximately $2 million, inventory, leasehold interests, intellectual property and other miscellaneous assets, including office furniture and equipment valued at approximately $65,600. *Id.*

10. Debtor's secured creditors include: i) Manasquan Bank, which is owed $1,309,232.14 on a line of credit, which debt becomes fully due and payable on August 24, 2022; ii) the Small Business Administration ("SBA") which is owed the principal amount of $500,000, which principal amount remains outstanding; and iii) various secured creditors relating to equipment loans estimated to be approximately $600,000. ECF No. 8. Manasquan Bank and the SBA have liens on all of the Debtor's assets pursuant to a UCC filing, other than the construction equipment and vehicles.[1]

**B.    The Financing Motion**

11. On August 13, 2022, the Debtor filed a Motion For Entry Of Interim And Final Orders (I) Authorizing (A) Post-Petition Financing And (B) Use Of Cash Collateral And

---

[1] In order to obtain a security interest in a motor vehicle in New Jersey, a certificate of ownership together with a financing statement must be filed with the division of motor vehicles. N.J.S.A. 39:10-8-11; *Kaplan v. Walker*, 164 N.J.Super. 130, 395 A.2d 897 (A.D.1978). The Debtor has not provided any evidence that the vehicles are secured by Manasquan Bank or the SBA.

Affording Adequate Protection; (II) Modifying The Automatic Stay; And (III) Scheduling A Final Hearing (the "Financing Motion"). ECF No. 13.

12. Pursuant to the Financing Motion, the Debtor sought to obtain up to $200,000 of post-petition financing from Vollers Excavating and Construction, Inc. ("Vollers") in return for a first priority lien on the Debtor's assets (excluding encumbered vehicles) to pay Debtor's ongoing expenses relating to payroll and insurance.

C. **The Sale Motion.**

13. On August 5, 2022, the Debtor filed the Sale Motion seeking to sell most of its assets to Vollers, including all of its construction equipment and vehicles and accounts receivable related to non-bonded projects. ECF No. 25. The Sale proposes to pay Manasquan Bank $975,000 at closing, assume the equipment loans estimated to be approximately $600,000, and if the sale to Vollers is successful, Vollers will assume the post-petition financing of $200,000. ECF 25 at ¶ 18. Vollers has agreed to a "kicker" on collection of the accounts receivable, providing a 15% return to the Debtor on collection of the net proceeds of the non-bonded jobs it intends to assume. *Id.* Manasquan Bank has agreed to a carve out of $25,000 for professional fees which is included in the sale price calculation and Vollers has also agreed to pay $75,000 in professional fees to the estate upon assuming the DIP loan. Finally, Vollers is to assume payment of liabilities for arrears relating to some union benefit plans, estimated to be approximately $175,000. *Id.* at ¶ 38.

14. As part of the Sale Motion, the Debtor seeks to enter into a settlement with Manasquan Bank, part of which will allow Manasquan Bank to pursue a deficiency claim against the guarantors of the debt owed to Manasquan Bank. *Id.*

15. In connection with the Sale Motion, the U.S. Trustee requested, and the Debtor provided the following documents: i) titles to some but not all vehicles; ii) appraisal dated March

4

28, 2022; iii) equipment financing documents; iv) Manasquan Bank loan documents; v) UCC financing documents; and vi) SBA loan documents.

16. After review of the above referenced documents, the U.S. Trustee objects to the Sale Motion as the Debtor has failed to provide any evidence that the sale is in good faith and for fair value. In addition, the Debtor has not provided any evidence as to the marketing of the Debtor business operations or assets. The U.S. Trustee also objects to the entry of a final order approving the DIP financing on the grounds that the superpriority lien being given to Vollers may impair any possible the recovery by unsecured creditors in the event the Sale Motion is not approved.

## APPLICABLE LAW AND ANALYSIS

**A.    The Sale Cannot Be Approved As The Debtor Has Not Shown That The Sale Is Proposed In Good Faith And For Fair Value.**

17. Within the Third Circuit, sales of assets outside of the ordinary course of business pursuant to 11 U.S.C. § 363(b) are governed by *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986). The *Abbotts Dairies* decision, provides that "when a bankruptcy court authorizes a sale of assets pursuant to section 363(b)(1), it is required to make a finding with respect to the 'good faith' of the purchaser." *See id*. at 149-50. The Third Circuit has stated that a "good faith" purchaser is "one who purchases in 'good faith' and for 'value.'" *See id*. at 147.

18. Since the proposed transaction is outside the ordinary course and prior to chapter 11 plan confirmation, the Debtor must also prove that there is a sound business justification for the transaction pursuant to the seminal case of *In re Lionel Corporation* allowing a bankruptcy court to make findings of fact as to the sale. *See In re Lionel Corp. 722 F.2d 1063, 1071 (2d Cir. 1983); see also In re Exaeris, Inc., 380 B.R. 741, 744 (Bankr. D.Del. January 15, 2008)* (articulating that substantial sale of assets outside of a chapter 11 plan is not unusual but requires careful bankruptcy court scrutiny as to business judgment).

5

19. In accordance with *Lionel* and subsequent precedent within the Third Circuit, the Debtor must prove the following: (1) a sound business purpose for the sale; (2) the proposed sale price is fair; (3) the debtor has provided adequate and reasonable notice; and (4) the buyer has acted in good faith. *See In re Exaeris, Inc.*, 380 B.R. at 744; *accord In re Sovereign Estates, Ltd.*, 104 B.R. 702, 704 (Bankr. E.D.Pa. 1989). *See also Abbotts Dairies of Pa., Inc.*, 788 F.2d at 149-50.

20. The U.S. Trustee avers that the Sale Motion lacks sufficient information to meet the legal standards set forth above for the following reasons:

    a) The Debtor has not submitted the appraisal or other evidence of the value of the assets to all parties in interest or to the Court. As the Third Circuit noted in *Abbott's Dairies*, "courts have held that '[f]air and valuable consideration is given in a bankruptcy sale when the purchaser pays 75% of the appraised value of the assets." *See Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d at 149. Some evidence of the value of the assets must be provided to all parties-in-interest allowing them to have an opportunity to object to the Sale Motion and before this Court can approve the sale;

    b) Insufficient information has been provided as to the price Vollers is paying for the Debtor's assets. Vollers is purchasing all of the Debtor's construction equipment and vehicles and much of its accounts receivables for $1,775,000- $2 million, based on the following, which provisions require additional information as set forth below:

        i) $975,000 is to be paid at closing to Manasquan Bank;

        ii) Vollers to assume an estimated $600,000 in secured equipment loans. The Debtor should provide the amount of debt secured by vehicles and equipment owed as of the Petition Date to verify the amount being paid by Vollers;

iii) Vollers to provide $200,000 in DIP financing;

iv) Vollers is to pay a 15% "kicker" based upon net proceeds of accounts receivable on the non-bonded contracts it intends to assume. This figure is speculative and should not be considered in determining the sale price unless Vollers agrees to guaranty a certain return to the Debtor's creditors. Further, the Debtor should disclose how the net proceeds of completed contracts requiring Vollers to pay the "kicker" is to be determined, who will make the determination, whether any accounting of such net proceeds will be provided and to whom, and how the "kicker' will be distributed, including whether the SBA will receive most, if not all, of the "kicker" given it has a lien on the Debtor's accounts receivable;

v) Manasquan Bank is to contribute $25,000 for professional fees, which should not be included in the sale price, as it is coming from Manasquan Bank, not Vollers;

vi) Vollers is to pay $75,000 of professional fees if the Sale Motion is approved. This amount should likely be included in the DIP financing of $200,000, unless the Debtor can show that the entire $200,000 was used during the post-petition operations; and

vii) Vollers is to pay arrears on union benefit plans estimated to be approximately $175,000. No information has been provided regarding the arrearages owed to the union benefit plans. Therefore, the estimated amount of $175,000 to be paid on account of these plans should not be included in the sale price until it can be shown that the arrearages actually exist and the amount that is owed;

      c)      Insufficient information has been provided to substantiate the sale price given the value of the assets. The appraisal provided to the U.S. Trustee (and not filed with the Court or served on parties-in-interest) indicates that the forced liquidation value of the construction equipment is $2,477,350 and the fair market value is $2,956,750. Among the information requested by the U.S. Trustee and provided by the Debtor is information relating to the percentage of the completion of the non-bonded projects to be assumed by Vollers. According to this information, three of the projects identified in the Exhibit are 100% complete and the Debtor is owed approximately $426,000 on those projects. Thus, not only is Vollers purchasing all of the Debtor's vehicles and construction equipment appraised at the low end of $2.4 million for $1,775,000 - $2 million, it is apparently also purchasing accounts receivable with an immediate return of $426,000. If correct, this information should be disclosed and explained. Given that the sale price is only $1,775,000 to an estimated $2 million, for assets immediately available for liquidation valued at approximately $2.8 million to $3.3 million, the Debtor must provide significantly more information to justify the sale price. The Debtor should also explain why Vollers is "purchasing" receivables for jobs that are 100% completed when the Debtor has argued that the basis for selling the assets, rather then liquidating the assets in chapter 7 or otherwise, is to ensure that the uncompleted jobs be completed;

      d)      The Debtor should disclose how the sale compares with a liquidation in chapter 7. Pursuant to the Sale Motion, the unsecured creditors will only receive a distribution if the "kicker" exceeds the SBA's claim of $500,000, as the SBA has a security interest in the Debtor's accounts receivable. On the other hand, it would appear that if the construction equipment and vehicles were sold at the forced liquidation value of $2,477,350, the Debtor would then pay the equipment liens of approximately

$600,000, leaving $1.8 million to pay Manasquan Bank, the SBA and unsecured creditors *pari pasu*.[2] The immediately collectible receivables of $426,000 would be available to pay Manasquan Bank. The Debtor should be required to provide a liquidation analysis that discloses the value of the construction equipment and vehicles, the exact amount of the outstanding obligations on the encumbered vehicles, and, as stated above, the amount of existing accounts receivable that are immediately due and owing. If the liquidation analysis indicates a distribution would be made to unsecured creditors, they should explain why the sale is fair under that circumstance, when under the proposed sale, unsecured creditors may receive little or nothing. The Debtor should also disclose why it valued the construction equipment and vehicles in its motion at $2.1 million, rather than the amount identified in the appraisal; and

    e)    The Debtor should be required to obtain the consent of the SBA for the use of cash collateral and for the sale free and clear of liens. The Debtor has failed to obtain the SBA's consent to use the SBA's cash collateral, presumably because the Debtor believes the SBA is entirely unsecured, which the Debtor has not established. Nor has the Debtor attempted to obtain the SBA's consent to sell the Debtor's assets free and clear of the SBA's lien, presumably for the same reason. After the sale, the SBA's lien will presumably attach to the 15% "kicker" paid to the Debtor after Vollers completes the Debtor's jobs. As such, the SBA's lien is jeopardized, and for this reason, the Debtor should be required to obtain the SBA's consent to the Sale Motion.

21.    Part of showing the necessity of a Section 363 transaction includes showing appropriate marketing of the assets, as part of the exercise of the debtor-in-possession's fiduciary

---

[2] As the construction equipment and vehicles are not secured by liens held by the SBA or Manasquan Bank, pursuant to 11 U.S.C. § 552(a), the proceeds of those sales would not be subject to the UCC1 held by the SBA or Manasquan Bank and would be distributed *pari pasu* with other unsecured creditors. See also, 11 U.S.C. § 363(a).

duties to creditors. Marketing efforts must be designed to maximize the returns to the estate. *See In re WPRV-TV, Inc.,* 983 F.2d 336, 342 (1st Cir. 1983).

22. The Debtor has failed to provide any information about the marketing of the Debtor's business operations or its assets. There is simply not enough information in the record concerning the fair value of the assets being sold or the marketing efforts undertaken by the Debtor to allow such a transaction.

23. Many of the items of information requested by the U.S. Trustee could be resolved if the Debtor filed its schedules and statement of financial affairs. As such, the Sale Motion should not be granted until the schedules and statement of financial affairs are filed, and an opportunity for parties-in-interest to review and comment upon the information included in the schedules and statement of financial affairs and how it compares to the information provided in the Sale Motion.

**B.    Objection to Final Order Approving DIP Financing And Cash Collateral**

24. As part of the agreement to provide post-petition financing, Vollers is obtaining a lien on all of the unencumbered construction equipment and vehicles. Vollers should not receive this lien until the Debtor has proven that the Sale Motion satisfies the business judgment test as any lien on the unencumbered construction equipment and vehicles, depletes the funds available to pay the SBA or unsecured creditors.

25. The U.S. Trustee reserves any and all rights, remedies and obligations found at law, equity or otherwise to, *inter alia*, complement, supplement, augment, alter and/or modify this Objection, file an appropriate Motion and/or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds or take such other actions as may become apparent upon further factual discovery.

**CONCLUSION**

WHEREFORE, considering the foregoing, the U.S. Trustee respectfully requests that the Sale Motion not be approved, and that the Court grant such further relief as is just and equitable.

        Respectfully submitted,

        ANDREW R. VARA
        UNITED STATES TRUSTEE
        REGIONS 3 & 9

        By:    */s/Maggie McGee*
                Maggie McGee
                Trial Attorney

Dated: August 17, 2022