**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
Caption in Compliance with D.N.J. LBR 9004-1(b)

**FOX ROTHSCHILD LLP**
49 Market St.
Morristown, NJ 07960
Joseph J. DiPasquale, Esq.
Michael R. Herz, Esq.
Joseph A. Caneco, Esq.
jdipasquale@foxrothschild.com
mherz@foxrothschild.com
jcaneco@foxrothschild.com
Telephone:  (973) 992-4800
Facsimile:   (973) 992-9125

*Proposed Counsel to the Debtor*
*And Debtor in Possession*

In re:

ASSUNCAO BROS., INC.,

               Debtor.

Chapter 11 (Subchapter V)

Case No. 22-16159-CMG

Judge: Hon. Christine M. Gravelle

**CERTIFICATION OF JACEN DINOFF**
**IN SUPPORT OF SALE AND FINANCING MOTIONS**

I, Jacen Dinoff, being of full age, hereby declare pursuant to 28 U.S.C. § 1746 under penalty of perjury as follows:

1.    I am the Chief Executive Officer of KCP Advisory Group ("KCP"), the proposed financial advisor to the above-captioned debtor (the "Debtor") in this chapter 11, subchapter V case (the "Case").  I submit this certification and attached exhibits (this "Certification") in support of the (i) *Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing (A) Post-Petition Financing and (B) Use of Cash Collateral and Affording Adequate Protection; (II) Modifying the Automatic Stay; and (III) Scheduling a Final Hearing* (the "Financing Motion") [D.I. 13]; and (ii)

*Debtor's Motion for Entry of Order (I) Authorizing the Sale of Certain of the Debtor's Assets to Vollers Excavating and Construction, Inc., (II) Approving Settlement, (III) Authorizing Debtor to Enter into Subcontracts with Vollers for Certain Non-Bonded Projects, and (IV) Authorizing the Debtor to Assume and Assign Certain Executory Contracts and Unexpired Leases* (the "Sale Motion" and together with the Financing Motion, the "Motions") [D.I. 25].

2. In addition to being the Chief Executive Officer, I am a co-founder of KCP, a leading business advisory firm specializing in providing creative solutions to rehabilitate and review businesses. I am a Certified Turnaround Professional (CTP) and have been engaged in turnaround and restructuring for more than twenty years and have been engaged in or overseen more than 200 case engagements. KCP and I are engaged to bring hands-on accounting, finance, management and operations experience as well as technical expertise in bankruptcy case administration and financial advisory. My career has included engagements in financial and operational restructurings, asset divestitures through sale and liquidation, and senior debtor/creditor advisor roles for many well-known companies, both publicly and privately held.

3. I am familiar with the Debtor's business through its engagement of KCP and am familiar with the events leading to its bankruptcy and events of the Case itself.

4. Attached as **Exhibit A** to this Certification is a liquidation analysis (the "Liquidation Analysis") which shows a range of recoveries, based on a valuation of the Debtor's assets provided in the Appraisal (as defined below), in a hypothetical liquidation of the Debtor's assets.

5.  Attached as **Exhibit B** to this Certification is an appraisal (the "Appraisal"), dated as of March 28, 2022, performed by Caspert Management Co., Inc.[1]

6.  Attached as **Exhibit C** to this Certification is a Certified UCC Lien search for the Debtor dated July 12, 2022.

7.  I understand that the United States Trustee (the "US Trustee") filed an objection to the Motions. One basis of the US Trustee's objection with respect to the Financing Motion was that Vollers Excavating and Construction, Inc. ("Vollers") is receiving a lien for its post-petition financing of the Debtor. In my experience such liens are customarily granted to such lenders in exchange for providing post-petition financing. Also, I understand that the US Trustee along with the Subchapter V Trustee believe such a lien and the Debtor's use of cash collateral would prejudice the Small Business Administration's (the "SBA") claim. The Debtor, Vollers, and the SBA have reached an agreement whereby the SBA has consented to the proposed sale to Vollers and related settlement with Manasquan Bank in consideration for: (1) Vollers paying $75,000 to the SBA within thirty (30) days of closing in partial satisfaction of the SBA's secured claim; and (2) an increase to the "Kicker Provision" (as defined in the Sale Motion) to 20% to be allocated 10% to the estate and 10% to the SBA on account of its secured claim (which allocation shall not subject the SBA to surcharge under section 506(c) of the Bankruptcy Code).

8.  Among the reasons that the US Trustee objected to the Sale Motion was that the Debtor did not provide sufficient information relating to valuation. The Appraisal and Liquidation Analysis attached hereto should demonstrate the value of the assets and potential recoveries for the estate in a liquidation scenario.

---

[1] The valuations in the Appraisal should be analyzed subject to the notes set forth in the Liquidation Analysis.

9. Additionally, the US Trustee objected to a lack of information about marketing of the Debtor's assets. It is my understanding that prior to KCP's engagement the Debtor attempted to market its assets to at least two other entities in the regional construction industry, and while there were discussions, the entities ultimately declined to pursue a transaction. The Debtor also sought other sources of financing which were not successful. Manasquan Bank was not willing to provide the Debtor with DIP financing. Vollers has been the only party interested in a transaction which will continue several of the Debtor's projects and generate future collections, preserve the jobs of the Debtor's 25 employees, and address certain various employee-related and other contractual obligations, thereby reducing potential claims, including potential priority claims, against the estate.

10. NGM also filed a limited objection to the Financing Motion. The Debtor will incorporate the language proposed by NGM in a revised order, removing any basis for its objection to the Financing Motion.

11. The transaction with Vollers provides numerous benefits for creditors and other constituencies in the Case. These include:

   a. $975,000 from Vollers to Manasquan Bank so it may release its blanket lien on assets of the Debtor (which secures over $1.3 million of obligations). Manasquan provides a $25,000 carve-out for estate professionals.

   b. A $75,000 payment to the SBA, plus a 10% "kicker" from the profit from projects for which Vollers will be a subcontractor completing certain of the Debtor's non-bonded projects (this was estimated to be $300,000 but is subject to adjustment).

   c. Vollers provides a $75,000 payment for estate professionals (freeing up in the aggregate (with Manasquan Bank's carve-out) $100,000 for estate professional fees

4

that would otherwise come out of the Debtor's estate and be paid before any unsecured creditors).

d. Vollers is assuming approximately $600,000 of equipment loans, reducing the creditor body and claims of the estate.

e. The estate will also receive a 10% kicker on future completed projects that Vollers collects (which was estimated to be as as much as $300,000). If the selected projects are not continued, no such revenue would be generated.

f. Vollers will pay approximately $175,000 of union benefit plan arrears. This amount would largely a priority unsecured claim and paid before any general unsecured creditors. This reduces the claims body and increases the amounts available to general unsecured creditors.

g. Approximately 25 workers' jobs will be preserved because they will continue to work on the subcontracted projects that are a part of the Vollers transaction.

12. Based on the foregoing, the Vollers Transaction is in the best interest of the estate, creditors, and other parties in interest. If the Sale Motion is not approved and liquidation occurs all work will cease, employees will not be paid (other than as claimants in the Case), the Debtor will not be able to generate income from existing contracts or collect on receivables from them, and the claims body will be larger with far more secured, administrative expense, and priority unsecured creditors and claims, with diminished prospects for recovery.

I certify that the foregoing statements made by me are true to the best of my knowledge, information and belief.

By: */s/ Jacen Dinoff*
Jacen Dinoff

Dated: August 21, 2022

6

137138286