UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
UNITED STATES TRUSTEE, REGIONS 3 & 9
Maggie H. McGee, Esq
One Newark Center, Suite 2100
Newark, NJ  07102
Telephone: (973) 645-3014
Email:  Maggie.mcgee@usdoj.gov

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | : Case No. 22-16159 CMG |
| | : |
| Assuncao Bros., Inc., | : Chapter 11   (subchapter V) |
| | : |
| | : The Hon. Christine M. Gravelle |
| Debtor. | : |
| | : Hearing Date: 8/22/2022 at 10:00 a.m. |

**OBJECTION OF THE UNITED STATES TRUSTEE TO DEBTOR'S APPLICATION FOR RETENTION OF PROFESSIONAL, FOX ROTHSCHILD, LLC, AS DEBTOR'S COUNSEL, *NUNC PRO TUNC* TO AUGUST 3, 2022**

Andrew R. Vara, United States Trustee for Regions 3 & 9 ("U.S. Trustee"), by and through his undersigned counsel, hereby objects to the Debtor's Application For Retention Of Professional *Nunc Pro Tunc* To August 3, 2022 ("Retention Application"), and in support thereof, states as follows:

**INTRODUCTION**

1. This Court has jurisdiction to hear and determine this Objection.

2. Pursuant to 28 U.S.C. § 586(a)(3), the U.S. Trustee is charged with administrative oversight of the bankruptcy system in this District.  Such oversight is part of the U.S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts.  *See United States Trustee v. Columbia Gas Systems, Inc. (In re Columbia Gas Systems, Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing"

1

under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

3. Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on the issues raised by this Objection.

## BACKGROUND AND RELEVANT FACTS

**A. The Bankruptcy Case.**

4. On August 3, 2022 (the "Petition Date"), Assuncao Bros, Inc. (the "Debtor") filed a voluntary petition for relief under Chapter 11, subchapter V, of title 11, United States Code. ECF No. 1.

5. The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6. On August 8, 2022, the U.S. Trustee filed the Notice of Appointment of Scott S. Rever as the subchapter V trustee. ECF No. 41.

7. The Debtor operates a masonry business specializing in curb, sidewalk, bridge, barriers, and slabs. ECF No. 8 at ¶ 5 and 6.

8. On August 25, 2022, this Court entered an order (a) authorizing the sale of certain of the Debtor's assets to Vollers Excavating and Construction, Inc., (b) approving settlement with Manasquan Bank as secured lender, (c) authorizing the Debtor to enter into subcontracts with Vollers for non-bonded projections, and (d) authorizing the Debtor to assume and assign certain executory contracts and unexpired leases. ECF No. 87. By this sale order, and subsequent motion rejecting executory contracts and unexpired leases, the Debtor sold or otherwise disposed of essentially all of its business.

9. As the U.S. Trustee understands the posture of the case, the remaining work to be done includes the preparation and filing of a plan of reorganization and subsequent distribution to creditors of the sale proceeds not already distributed and presumably the filing of fee applications of professionals. As a subchapter V case, the Debtor's plan is due to be filed on November 1, 2022, two months from now.

10. On August 26, 2022, the Debtor filed the Retention Application seeking to employ Fox Rothschild LLP ("Fox") as counsel to the Debtor. ECF No. 90.

11. The Retention Application seeks compensation for partners in the firm in the range of $355 to $995 and senior counsel and counsel (generally 7 or more years' experience) in the range of $275-875. The Retention Application further states that the attorneys that will be primarily responsible for the representation of the Debtor in the case range from $485 to $910.

12. With regard to conflicts checks, Fox conducted a conflicts check with respect to its connections to the Debtor, the member of the Debtor; the officers and professionals of the Debtor; the lenders and agents of the Debtor; the top twenty unsecured creditors of the Debtor prior to the Petition Date; certain judgment lien creditors of the Debtor, the Judges of the United States Bankruptcy Court for the District of New Jersey and the United States Trustee for Region 3 and the employees of the Newark, NJ Office of the United States Trustee.

13. The conflicts check conducted by Fox revealed that NGM Insurance Company, a major creditor and party in interest in this case, is a current client in unrelated matters and a conflict waiver letter has been executed.

14. The Retention Application fails to disclose the payments received from the Debtor by Fox prior to the Petition Date or the date of the Application.

15. The Disclosure of Compensation of Attorney for Debtor ("2016 Statement") filed on August 18, 2022, discloses that Fox received $172,211 in fees prior to the filing of the 2016

3

Statement. ECF No. 66. In a footnote, Fox discloses that it received $104,521 "towards payment of its pre-petition invoices for fees and expenses incurred in connection with the bankruptcy filing and related services and Fox maintains a retainer of $67,690." *Id.*

16. On August 26, 2022, Fox amended its 2016 Statement to indicate that it had received $185,000 prior to the filing of the Statement and in a footnote explains that $117,310 was applied toward pre-petition invoices and that Fox maintains a retainer of $67,690.

17. Fox has failed to provide any analysis as to whether it received a preferential payment under 11 U.S.C. § 547.

## APPLICABLE LAW AND ANALYSIS

### A. If Fox Wants A Nunc Pro Tunc Order It Must Set Forth And Prove The Requisite Criteria Under Relevant Third Circuit Authority.

18. The Court should deny approval of the *nunc pro tunc* relief as Fox failed to provide any information supporting the *nunc pro tunc* request.

19. *Nunc pro tunc* relief is an equitable remedy that is left to the discretion of the court. *See Weil v. Markowitz*, 898 F.2d 198, 200 (D.C. Cir. 1990) (noting that the issue of whether to grant *nunc pro tunc* relief is best left to the discretion of the court). Black's Law Dictionary defines *nunc pro tunc* as relief that has a retroactive legal effect. This discretion is not without parameters.

20. The Third Circuit unequivocally established the "extraordinary circumstances" standard for approval of *nunc pro tunc* employment. *In re Arkansas Co.,* 798 F.2d 645 (3d Cir. 1986) and *In re F/S Airlease II, Inc.,* 844 F2d. 99 (3d Cir. 1988), *cert. denied*, 488 U.S. 852, 102 L.Ed.2d 110, 109 S. Ct. 137 (1988). The Third Circuit stated that the determination of what constitutes "extraordinary circumstances" requires consideration of various factors:

such as whether the applicant or some other person bore the responsibility for applying for approval; whether the applicant was under time pressure to begin service without approval; the amount of delay after the applicant learned that initial approval had not been granted; the extent to which compensation to the applicant will prejudice innocent third parties; and other relevant factors.

*In re Arkansas Co.*, *supra*, at 650.

21. The Third Circuit has held that a circumstance must be outside of the control of the applicant before it can be deemed "extraordinary." *See, e.g.*, *In re Arkansas Co.*, 798 F.2d at 649-50. Circumstances created by the applicant's negligence are not sufficient to justify retroactive relief. *Id.* at 650.

22. It should also be noted that equitable arguments such as the fact that work may have already been performed or may even have benefitted the estate have been rejected by the Third Circuit. *Cf., In re F/S Airlease*, 844 F.2d at 108.

23. In this case, Fox has provided no basis to allow *nunc pro tunc* relief.

**B. Fox Has Failed To Make Sufficient Disclosures In Its Retention Application**

    **a. Fox Must Disclose the Payments It Received Pre-Petition, The Dates Of The Payments And The Amounts Of Each Payment.**

24. Professionals to be employed in bankruptcy cases are required to disclose all relevant information related to their employment in the retention application and the failure to do so requires that the application be denied. *See In re Drexal Burnham Lambert Group, Inc.*, 112 B.R. 584 (Bankr. S.D. N.Y. 1990). This information includes information that may be pertinent in determining whether an attorney is disinterested, holds a conflict of interest, and whether the services to be provided are beneficial and necessary. *Id.*

25. In this case, Fox has failed to disclose the retainer it holds and the payments it has received pre-petition. The fact that these figures may have been disclosed in an amended 2016

5

Statement is irrelevant. Neither the Court nor the U.S. Trustee should be required to hunt for the information relevant in determining whether Fox is appropriately employed in this case.

### b. Fox Must Conduct A "Pillowtex Analysis" To Determine If It Has Received A Preferential Payment

26. The Court of Appeals for the Third Circuit has held that if a professional has an actual conflict of interest then that professional cannot be retained by the bankruptcy estate under 11 U.S.C. § 327 (a). *See Frist Jersey Securities, Inc.*, 180 F.3d 504, 509 (3d Cir. 1999) (*citing In re Marvel Entertainment Group*, 140 F.3d 463, 476 (3d Cir. 1998)).

27. The Third Circuit further held that a preferential transfer to a § 327(a) professional would constitute an actual conflict of interest. *In re Pillowtex, Inc.,* 304 F.3d 246, 255 (3d. Cir 2002) (*quoting Frist Jersey Securities*, 180 F.3d at 509).

28. In *Pillowtex*, the Third Circuit clarified that when presented with the situation that a proposed professional may have received preferential payments, that the determination of whether the professional received preferential payments and is thereby disqualified from serving as the debtor's professional cannot be delayed to a later point in the case and must be made in connection with the retention of the professional. *See Pillowtex*, 304 F.3d at 253.

29. The process of analyzing prepetition transfers from a debtor to a proposed professional to determine if the transfers form the basis of a retention objection based on *Pillowtex* and its precedents is referred to by the U.S. Trustee as a *Pillowtex* analysis.

30. In this case, Fox has failed to provide a *Pillowtex* analysis to the U.S. Trustee or the information necessary to complete a *Pillowtex* analysis.

31. The U.S. Trustee requested additional information from Debtor's counsel about the Debtor's pre-petition payments to Fox. However, no response has been received.

32. This objection was filed to preserve the U.S. Trustee's rights as to the retention of Fox, pending receipt and analysis of the information requested.

### c. Fox Needs To Make Additional Disclosure In Connection With Its Representation of NGM Insurance

33. While Fox has disclosed that it currently represents NGM Insurance in connection with an unrelated matter, Fox needs to provide additional information with respect to the matter given the large role NGM Insurance has taken in this case, including: 1) the nature of the services being provided; 2) the attorneys at Fox providing those services and their relationship or connection with the attorneys providing services to the Debtor; and 3) whether any steps have been taken to ensure that confidential or privileged information of either NGM Insurance or the Debtor is not exchanged between counsel.

### C. Fox's Proposed Fees Are Excessive For A Subchapter V Case

34. Subchapter V is meant to be offer a streamlined reorganization vehicle for some middle market companies. Brett S. Thiesen and Natasha Sungonga, *Subchapter V Bankruptcy for Middle Market Debtors*, New York Law Journal, September 17, 2021; *See also, In re Seven Stars on the Hudson Corp,* 618 B.R. 333 (Bankr. S.D. Fla. 2020). Subchapter V is intended to provide eligible debtors with a more efficient, less costly, and simpler path to Chapter 11 restructuring. *Id.* It eliminates the official committee of unsecured creditors, eliminates the payment of U.S. Trustee fees, provides a reduced period for the debtor to file a plan, permits a debtor to spread the payments of administrative claims over the life of the plan and relaxes the "absolute priority rule," which allows a debtor's equity holders to retain their ownership interests in the debtor without an infusion of new capital or the payment of all creditors in full. 11 U.S.C. § 1185 et.seq. Subchapter V also permits a debtor to confirm a plan without accepting votes, because the debtor can "cramdown" a plan on all creditors without the approval of an impaired, consenting class of creditors. 11 U.S.C. § 1191(b).

35. Against this backdrop, Fox seeks compensation at the rate in excess of $900 per hour for its services. This amount is excessive in a small business case under subchapter V in light of the purpose and design of subchapter V.

WHEREFORE, considering the foregoing, the U.S. Trustee respectfully requests that the Retention Application be denied, and that the Court grant such further relief as is just and equitable.

Respectfully submitted,

ANDREW R. VARA
UNITED STATES TRUSTEE
REGIONS 3 & 9

By:  /s/Maggie McGee
    Maggie McGee
    Trial Attorney

Dated: September 2, 2022