| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>**Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>**MCELROY, DEUTSCH, MULVANEY<br> & CARPENTER, LLP**<br>1300 Mt. Kemble Avenue<br>P.O. Box 2075<br>Morristown, NJ 07962-2075<br>Adam R. Schwartz<br>Scott A. Levin<br>aschwartz@mdmc-law.com<br>slevin@mdmc-law.com<br>Telephone: (973) 993-8100<br>Facsimile: (973) 425-0161<br><br>*Attorneys for NGM Insurance Company* | |
| In re:<br><br>ASSUNCAO BROS., INC.,<br><br>　　　　　　　　　　　　　Debtor. | Chapter 11 (Subchapter V)<br><br>Case No. 22-16159 CMG |

**NGM INSURANCE COMPANY'S LIMITED OBJECTION TO
FEE APPLICATIONS [DOCS. 158 AND 159]
<u>AND RESERVATION OF RIGHTS</u>**

Creditor NGM Insurance Company ("<u>NGM</u>" or "<u>Surety</u>") through its undersigned counsel, hereby files this limited objection (the "<u>Limited Objection</u>") to *the First Interim Application Of Fox Rothschild LLP as Counsel to the Debtor for Allowance of Compensation for Professional Services Rendered And Reimbursement of Expenses Incurred for the Period from August 3, 2022 through October 31, 2022* [Doc. 158] (the "<u>Fox Fee App</u>.") and the *First Interim Application of KCP Advisory Group LLC as Financial Advisors to the Debtor for Allowance of Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred for the Period from August 3, 2022 through October 31, 2022* [Doc. 159] (the "<u>KCP Fee App</u>." and with the Fox Fee App., the "<u>Fee Apps</u>.") and Reservation of Rights and respectfully states the following:

1

1. NGM does not object to entry of interim orders approving the Fox Fee App. and the KCP Fee App. but files this Limited Objection to reserve its rights to seek disgorgement to the extent any trust funds were used to fund the retainers with Fox Rothschild LLP ("Fox.") and/or KCP Advisory Group LLC ("KCP"), or are being used for any other professional fees, and NGM requests that language reserving such rights be included in any order approving the Fee Apps.

2. As described further below, the Debtor received trust funds prior to August 3, 2022 ("Petition Date") that the Debtor was required by law and the Indemnity Agreement (defined below) to apply in a specific manner which the Debtor's principal admitted it did not always do. Following receipt of the trust funds, and prior to the Petition Date, the Debtor made payments to both Fox and KCP. Both Fee Apps. seek entry of interim orders permitting Fox and KCP, respectively, to apply their retainers to the awarded fees and expenses.

3. NGM's investigation regarding the payment of trust funds to the Debtor, and the application and transfer of such funds by the Debtor, is ongoing. NGM files this Limited Objection to preserve its rights to seek disgorgement to the extent that it determines that trust funds that were paid to the Debtor pre-petition were used to fund the Debtor's professionals.

**I     Background and Procedural History**

4. NGM is a surety which, prior to the Petition Date, issued certain performance and payment bonds ("Bonds") on behalf of the Debtor, as principal, including bonds for certain public owner obligees/counterparties ("Bonded Contract Owners"),[1] arising out of certain public works

---

[1] Bonded Contract Owners and Bonded Contracts include, but are not necessarily limited to: 1) **the City of Jersey City, New Jersey** (Dr. Martin Luther King, Jr. Intersection Safety Improvements – Replacing Existing Curb Ramps with new ADA –compliant Concrete Ramps, Concrete Sidewalks & Curb Work, Providing Pedestrian Signal Upgrades, Resetting Castings [project includes 8 intersections along Dr. Martin Luther King Drive]) **and** (Replacement of County Bridge Contract # 20002); 2) **County of Somerset, New Jersey** (Maintenance Contract Repairs of Various Park Commission Structures) **and** 3) (Replacement of County Bridge Belle Mead-Blawenburg Rd (CR 601) over Back Brook, Township of Montgomery, Somerset County, Replace Bridge, Contract No. 19008); 4) **Township of Raritan** (Sunny Hills Section II Road Reconstruction Improvements, Raritan Township); 5) **Essex**

2

contracts ("Bonded Contracts"), which Bonds relate to, and under which such Bonded Contracts the Debtor was performing ("Bonded Projects") as of the Petition Date. (See Declaration of Eli Cinq-Mars dated August 17, 2022, Doc. 61-1 (the "Cinq-Mars Decl.") at ¶ 3).

5. The Debtor's schedules [Doc. 74] (the "Schedules") show that the following pre-petition payments were made to Fox: $100,000 on July 8, 2022 and $85,000 on 7/29/22.

6. As set forth in the Fox Fee App. Fox held a $67,690.00 retainer (the "Fox Retainer") as of the Petition Date. (Fox Fee App., ¶2).

7. The Schedules also show that KCP received the following pre-petition payments: $100,000 on July 8, 2022 and $85,000 on July 29, 2022.

8. As set forth in the KCP Fee App., KCP held a $98,168.75 retainer (the "KCP Retainer") as of the Petition Date. (KCP Fee App., ¶2).

NGM Bonds and Indemnity Agreement

9. Prior to the Petition Date, in order to induce NGM to issue the Bonds on behalf of the Debtor, the Debtor, as well as Martin Assuncao and Lisa Assuncao entered into agreements of indemnity in favor of NGM on or about July 20, 2012 and January 30, 2019 ("Indemnity Agreements"). (Cinq-Mars Decl. at ¶ 4).

10. The Indemnity Agreements dated July 20, 2012 and January 30, 2019 contain

---

**County, New Jersey** (Park Avenue – Nine Traffic Signals and Road Improvements in Cities of Orange, East Orange and Newark, New Jersey) **and** 6) (Provide Nine Traffic Signals and Roadway Improvements, Countywide Signals and Roadway Improvements); 7) **Township of Springfield** (Caldwell Place Culvert Repair); 8) **County of Ocean, New Jersey** (Construction of Traffic Signal at the Intersection of Prospect Street & Massachusetts Avenue – Township of Lakewood); 9) **Township of Monroe, New Jersey** (Intersection Improvements Spotswood, Gravel Hill & Machaponix/Pergola Avenue Road Improvements); 10) **County of Hunterdon, New Jersey** (Resurfacing & Drainage Improvements for County Route 616, Road Improvements in the Township of Franklin, County of Hunterdon); 11) **County of Somerset, New Jersey** (Replacement of County Bridge Contract #20002 Replacement of Bridge); 12) **Passaic County, New Jersey** (Replacement of the Kingsland Road Bridge over the Third River, within the City of Clifton); 13) **County of Middlesex, New Jersey** (Improvements to Intersection of Forsgate & Rossmoor, Monroe Township); 14) **Township of Piscataway, New Jersey** (Drake Lane Improvements Phase II); 15) **County of Monmouth, New Jersey** (Replacement of Bridge U-15 on Breza Road over Doctor's Creek, Upper Freehold and Allentown); and 16) **County of Hudson, New Jersey** (Improvement to JFK Boulevard from Pavonia Road). NGM also issued a fringe benefits bond no. S-324394.

identical indemnity clauses, provide NGM with a security interest in the Debtor's equipment, and establish a trust fund with respect to payments received by the principal/contractor, as the Indemnity Agreements state in pertinent part:

> THIRD:  The CONTRACTOR and INDEMNITORS shall exonerate, hold harmless, indemnify and keep indemnified the SURETY from and against any and all claims, demands and liability for losses, costs, and expenses of whatsoever kind or nature, including court costs, counsel fees, investigative costs, and from and against any and all other such losses and expenses which the SURETY may sustain or incur:  (A) By reason of having executed or procured the execution of Bonds … (E) in prosecuting or defending any action or claim in connection with any Bond, whether SURETY at its sole option elects to employ its own counsel, or permits or requires CONTRA TOR and INDEMNITORS to make arrangements for the SURETY'S legal representation….
>
> FOURTH:  The CONTRACTOR, and the INDEMNITORS as their interests may appear hereby assign, transfer and set over to SURETY the rights and property described hereafter, as collateral, to secure any and all obligations in this Agreement and any other indebtedness or liabilities of the CONTRATOR to the SURETY, whether heretofore or hereafter incurred… (B) All the rights, title and interest of the CONTRACTORS or INDEMNITORS in and to all machinery, equipment, plant, tools, inventory and materials which are now, or may hereafter be, utilized in connection with any contract, regardless of whether they are located at a construction site, in storage elsewhere, or in transit anywhere….
>
> EIGHTH:  The CONTRACTOR and INDEMNITORS covenant and agree that all payments received for or on account of any CONTRACT shall be held in trust as a trust fund for the payment of obligations incurred or to be incurred in the performance of any CONTRACT and for labor, materials and services furnished in the prosecution of the work in any CONTRACT or any extension of modification thereof.  It is expressly understood and declared that all monies due and to become due under any CONTRACT are also trust funds, whether in the possession of the CONTRACTOR or INDEMNITORS or otherwise. The trust funds shall be for the benefit and payment of all obligations for which the SURETY may be liable under any bonds.  The trust shall incur to the benefit of the SURETY for all liability or loss it may have or sustain any bond, and this agreement and declaration constitute notice of such trust.

(Cinq-Mars Decl.  at ¶ 5).

11. The Debtor has received and may receive payments from Bonded Contract Owners on Bonded Contracts ("Bonded Contract Proceeds"), which constitute trust funds for the benefit of the Debtor's laborers, subcontractors, suppliers and materialmen ("Trust Fund Beneficiaries") on the Bonded Contracts, and for the benefit of NGM. (Cinq-Mars Decl. *Id*. at ¶ 6).

4

Post-Petition Motions and Orders

12. In the *Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing (A) Post-Petition Financing and (B) Use of Cash Collateral and Affording Adequate Protection; (II) Modifying the Automatic Stay; And (III) Scheduling A Final Hearing* [Doc. 13] at ¶¶22-23, the Debtor acknowledges that Bonded Contract Proceeds may be trust funds:

> The Debtor believes that the progress payments, retainage, change order and claim proceeds that are outstanding and/or which may be earned and come due in the future with respect to the Bonded Projects (collectively, "Bonded Project Proceeds"), when paid by Project Owners may constitute trust funds for the benefits of laborers, subcontractors, suppliers and materialmen of the Bonded Projects pursuant to applicable state statutes. The Debtor further believes that such Bonded Project Proceeds may be subject to the interests of Surety under (i) the trust provisions of the Indemnity Agreement; (ii) where applicable, state statutes; and (iii) common law principles of subrogation to the extent Surety has made or may make payment under the Bonds (the "Trust Fund Beneficiaries").

> For purposes of Debtor's use of Cash Collateral, the Debtor seeks authority to segregate Bonded Project Proceeds from the proceeds and financing for Non-Bonded Projects in order to comply with certain statutory and common law obligations, such that when Bonded Project Proceeds are paid by Project Owners to the Debtor or its assigns such Bonded Project Proceeds constitute trust funds and shall be applied exclusively to satisfy Bond obligations and claims of Trust Fund Beneficiaries

13. The *Final Order (I) Authorizing (A) Post-Petition Financing and (B) Use of Cash Collateral and Affording Adequate Protection; and (Ii) Modifying the Automatic Stay* [Doc. 84] (the "Final DIP Order") contains the following language regarding NGM in paragraphs 6 and AA:

> 6. Prepetition Surety Bonds. Prior to the Petition Date, NGM executed certain performance and payment bonds (the "**Bonds**") on behalf of the Debtor including the Bonds bearing bond numbers and for certain obligees (the "**Project Owners**") of and for fourteen (14) of the Debtor's ongoing construction projects (the "**Bonded Projects**") which Bonds relate to certain of the contracts which the Debtor was performing under as of the Petition Date. The Debtor believes that progress payments, retainage, change order and claim proceeds that are outstanding and which may be earned and come due post-petition with respect to the Bonded Projects (collectively, the "**Bonded Project Proceeds**"), when paid by Project Owners m a y constitute trust funds for the benefit of laborers, subcontractors, suppliers, and materialmen of the Bonded Projects pursuant to applicable state

5

statutes. The Debtor further believes that such Bonded Project Proceeds may be subject to the interests of Surety under (i) the trust provisions of the Indemnity Agreement; (ii) where applicable, state statutes; and (iii) common law principles of subrogation to the extent Surety has made or may make payment under the Bonds (the "**Trust Fund Beneficiaries**")**.**

…

AA. Surety Bond Obligations. With respect to each of the Bonded Projects, NGM Insurance Company, or its past, present or future parents, subsidiaries or affiliates (the "**Surety")** is authorized to have access to and use Bonded Contract Proceeds (which Bonded Contract Proceeds shall be turned over and/or paid to the Surety and need not be kept in a separate account by the Surety), as the Surety so reasonably determines, to complete the Bonded Contracts, to make payments to the Trust Fund Beneficiaries, to make payments for any obligations under the Bonds, and/or to make payment to the Surety for all losses, costs, and expenses of whatsoever kind or nature, including court costs, counsel fees, and/or investigative costs incurred by the Surety by reason of the Surety having executed a Bond or the Bonds. Nothing contained in the Motion, the Interim Order or this Final Order shall obligate the Surety to extend its Bonds to Debtor, as contracts of financial accommodation, or to otherwise provide additional Bonds to the Debtor. Nothing in the Motion, the Interim Order, this Final Order or the DIP Loan documents shall in any way prime or affect the rights of the Surety as to (a) any funds that the Surety is holding and/or that are being held for the Surety presently or in the future, whether in trust, as security, or otherwise, including any proceeds due or to become due to the Debtor in relation to contracts bonded by the Surety; (b) any substitutions or replacements of said funds including accretions to and interest earned on said funds; or (c) any letter of credit related to any indemnity, collateral trust, bond or agreements between or involving the Surety and the Debtor (collectively (a) to (c), the "**Surety Assets").** Nothing in the Motion, Interim Order, this Final Order or the DIP Loan documents shall affect the rights of the Surety under any indemnity agreement, collateral trust agreement, and/or any related agreements between or involving the Surety and any of the Debtor or any of the Debtor's nondebtor affiliates as to the Surety Assets or otherwise, including but not limited to the Agreements of Indemnity executed by the Debtor, Martin Assuncao and Lisa Assuncao on or about July 20, 2012 and January 30, 2019. In addition, nothing in the Interim Order, the Motion or the DIP Loan documents shall prime or otherwise impact: (x) setoff and/or recoupment rights or trust fund claims and/or the lien rights of the Surety or of any party to whose rights the Surety has or may become subrogated; and/or (y) any subrogation or other common law rights of the Surety. In addition, notwithstanding anything in the Motion, the Interim Order, this Final Order or the DIP Loan documents to the contrary, the rights, claims and defenses of the Surety, including but not limited to, the Surety's rights under any properly perfected liens and claims and/or claim for equitable rights of subrogation are fully preserved. Nothing herein is an admission by the Surety or the Debtor, or a determination by the Bankruptcy Court, regarding any claims under any bonds, and the Surety and the Debtor reserves any and all rights, remedies and defenses in connection therewith. To the extent, if any, that the Debtor's use of funds constitute

the use of the Surety's cash collateral, the Surety shall have a replacement lien in the Debtor's assets to the same extent, amount and priorities as existed as of the petition date. In addition, the Surety reserves its rights as to any issues concerning the Debtor's use of funds. Notwithstanding the foregoing, nothing in this Order or the Consent Order (described below) shall prevent the U.S. Trustee, the Subchapter V Trustee, the Debtor, any creditor or parties in interest to review and challenge any determination, position, claim, lien or right asserted by the Surety.

14. In addition, the *Order (I) Authorizing The Sale Of Certain Of The Debtor's Assets to Vollers Excavating And Construction, Inc., (Ii) Approving Settlement With Manasquan Bank As Secured Lender, (III) Authorizing The Debtor To Enter Into Subcontracts With Vollers For Non-Bonded Projects, And (Iv) Authorizing The Debtor To Assume And Assign Certain Executory Contracts And Unexpired Leases* [ Doc. 87] (the "Sale Order") contains the following relevant language in Paragraph J.(1)(emphasis added) :

> NGM hereby agrees that it will not assert a claim against the Debtor's estate that any funds being held by the Debtor's estate or any funds that come into the Debtor's estate hereafter shall be turned over to NGM in connection with the Shore System Trust Claim. **This waiver shall not affect in any way and/or waive and release: (i) any other claim to trust funds in connection with funds being held or later held by the estate or any trust fund claims to accounts receivable for any other matter;** (ii) any unsecured claim against the Debtor's estate on account of any amounts paid by NGM to the Shore Systems, L.L.C. as a result of the failure of the Debtor to pay Shore Systems, Inc., the $348,075 plus fees and costs incurred by NGM in connection therewith, and **(iii) any claim of NGM against any other party by way of indemnity or otherwise in connection with the Shore Systems Trust Claim including but not limited any claim of a liability as a transferee of any such trust funds or any claim for failing to cause the Debtor to properly pay said trust funds to Shore Systems, Inc., except that any such claim shall be reduced by any sums paid to NGM (net of costs to NGM) as a result of the litigation to be brought against Schiavone as described in Paragraph J(3) hereof**. Nothing herein is a waiver of any defense by NGM to any claim brought by Shore Systems, Inc. against NGM or shall be deemed as an admission by NGM in connection therewith. Except as provided herein as to the Shore System Trust Claim, nothing herein shall affect the rights, lien, claims, and trust fund claims of NGM and its bond beneficiaries and the priority thereof as to any assets that are not part of the Vollers Transaction. The rights and defenses of the Debtor, the Debtor's estate, and third parties with respect to any rights and claims reserved for NGM under this paragraph are preserved.

15. In the Sale Order, ¶H, the Debtor acknowledged that NGM "asserts that the Debtor may be in possession of disbursed funds or come into possession of said funds in the future generated from certain Bonded Projects that constituted trust funds for, among others, subcontractors on those projects and NGM (including, but not limited, to approximately $348,075 in trust funds that should have been paid to Shore Systems, L.L.C., in connection with the Monmouth County "Renovation of Bridge U-15" bonded project (the "Shore Systems Trust Claim")) as described in the Declaration of Eli Cinq-Mars and its related exhibits filed at Docket. No. 76."

16. Upon information and belief, the Debtor received payments on Bonded Contracts, including, without limitation, the $348,075 in trust funds that should have been paid to Shore Systems, L.L.C., that were not properly applied prior to the Petition Date and prior to payment of the retainers to Fox and KCP.

17. Based on a review of documents produced by the Debtor, it appears that the Debtor also received approximately $150,000 in trust fund payments from the County of Passaic ($128,246.13) and the Township of Raritan ($22,659.91) within 90 days prior to the Petition Date. NGM is continuing to investigate whether these trust funds received by the Debtors were properly applied.

18. There were additional trust fund payments made to the Debtor, and some of those additional trust fund payments may have been made within 90 days prior to the Petition Date.

**II    Limited Objection**

19. As set forth above, the Sale Order specifically reserved NGM's rights with respect "to any claim of NGM against any other party by way of indemnity or otherwise in connection with the Shore Systems Trust Claim including but not limited any claim of a liability as a transferee

of any such trust funds or any claim for failing to cause the Debtor to properly pay said trust funds to Shore Systems, Inc. and all of NGM's rights with respect to all other Bonded Projects."

20. Funds received by the Debtor on Bonded Contracts (all of which were public works projects in New Jersey) are required to be held in trust pursuant to the Indemnity Agreements and as per N.J.S.A. 2A:44–148 which provides the following:

> All money paid by the state of New Jersey or by any agency, commission or department thereof, or by any county, municipality or school district in the state, to any person pursuant to the provisions of any contract for any public improvement made between any such person and the state or any agency, commission or department thereof, or any county, municipality or school district in the state, shall constitute a trust fund in the hands of such person as such contractor, until all claims for labor, materials and other charges incurred in connection with the performance of such contract shall have been fully paid.

21. NGM does not object to entry of interim orders approving the Fee Apps. Rather, NGM files this Limited Objection to reserve its rights to seek disgorgement to the extent any trust funds were used to fund the retainer with Fox or KCP, or are being used for any other professional fees, and requests that the following language reserving such rights be included in any order approving the Fox Fee App and the KCP Fee App.:[2]

> Notwithstanding the entry of this Order or anything set forth herein or in the fee applications [Doc. 158 and 159], NGM's claims and rights against Fox Rothschild LLP and KCP Advisory Group LLC, if any, as a transferee of any trust funds are preserved, and nothing herein shall affect such rights and claims. The rights and defenses of Fox Rothschild LLP and KCP Advisory Group LLC with respect to any rights and claims preserved for NGM under this paragraph are preserved.

## **RESERVATION OF RIGHTS**

22. The submission of this Limited Objection by NGM is not intended as, and shall not be construed as: (a) NGM's admission of any liability or waiver of any defenses or limitation of

---

[2] It should be noted that since the Fee Apps. are seeking interim orders, all rights should already be preserved with respect to the entry of final orders. However, NGM seeks the language set forth in paragraph 21 as a precaution.

9

any rights of NGM with respect to any claims against any one or more of the bonds or under any indemnity agreements in favor of the NGM; (b) NGM's waiver or release of any right to exoneration it may have against anyone with respect to any of the bonds; (c) NGM's waiver or release of its right to be subrogated to the rights of one or more of the parties paid in connection with the bonds; (d) an election of remedy; or (e) consent to the determination of the Debtor's liability to NGM by any particular court, including, without limitation, the Bankruptcy Court.

23. NGM reserves the rights to object and put forth any argument in relation to any application for compensation.

24. NGM expressly reserves, and does not waive, any and all of its rights, claims, defenses, limitations, and/or exclusions in connection with the Debtor's rights and obligations under the Indemnity Agreements, the bonds, applicable law, or otherwise. NGM further reserves all rights to assert any and all such rights, claims, defenses, limitations and/or exclusions in any appropriate manner or forum whatsoever (including, without limitation, any of its rights to have any non-core matter relating to the interpretation of its contractual rights and Debtor's contractual obligations adjudicated by the United States District Court).

25. NGM further reserves all of its rights to raise any issues contained in this Limited Objection and any other related issues in any procedurally appropriate contested matter and/or adversary proceeding, including, without limitation, (i) objections to confirmation of any plan; (ii) a separate adversary proceeding requesting any appropriate declaratory and/or injunctive relief; (iii) or an objection to any subsequent motion seeking approval of an asset sale to any prospective asset purchaser with respect to any contractual rights that may be adversely affected by a sale motion or the confirmation of any plan.

## **CONCLUSION**

**WHEREFORE**, for the reasons set forth herein, NGM Insurance Company respectfully requests that any order entered granting the Fox. Fee App. and the KCP Fee App. include the language set forth herein preserving NGM's rights, and for such further and other relief the Court deems appropriate.

                                      **McELROY, DEUTSCH, MULVANEY**
                                        **& CARPENTER, LLP**

Dated: January 3, 2023                */s/ Scott A. Levin*
                                              Adam R. Schwartz
                                              Scott A. Levin
                                              1300 Mount Kemble Ave.
                                              P.O. Box 2075
                                              Morristown, NJ 07960
                                              Telephone: 973-993-8100
                                              Facsimile: 973-425-0161
                                              E-mail: aschwartz@mdmc-law.com
                                                             slevin@mdmc-law.com
                                              *Attorneys for NGM Insurance Company*