| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>Caption in Compliance with D.N.J. LBR 9004-1(b)<br><br>**TRIF & MODUGNO, LLC**<br>89 Headquarters Plaza<br>North Tower, Suite 1201<br>Morristown, New Jersey 07970<br>Louis A. Modugno<br>lmodugno@tm-firm.com<br>Telephone:  (973) 547-3611<br>*Counsel to Vollers Excavating and Construction, Inc.* | |
| In re:<br><br>ASSUNCAO BROS., INC.,<br><br>                Debtor. | Chapter 11 (Subchapter V)<br><br>Case No. 22-16159-CMG<br><br>Judge: Hon. Christine M. Gravelle<br><br>Hearing Date:  January 31, 2023 |

**MEMORANDUM OF LAW IN REPLY TO OPPOSITION OF EXTECH BUILDING MATERIALS, INC. FOR ENTRY OF ORDER (I) ENFORCING SALE ORDER AGAINST EXTECH BUILDING MATERIALS, INC., (II) DETERMINING THAT CLAIM AGAINST CONTI ENTERPRISES, INC.'S SURETY VIOLATES THE SALE ORDER, (III) DIRECTING EXTECH TO WITHDRAW ITS BOND CLAIM, AND (III) GRANTING RELATED RELIEF**

**PRELIMINARY STATEMENT**

Vollers Excavating and Construction, Inc. ("Vollers"), as the purchaser of substantially all the assets of Assuncao Brothers, Inc. the above-captioned debtor ("ABI" or the "Debtor"), by and through its counsel, submits this memorandum of law together with the Supplemental Certification of Louis A. Modugno, Esq. dated January 27, 2023 ("LAM Cert. II") submitted herewith, in reply to the opposition filed by Extech Building Materials, Inc. d/b/a Liberty Building Products ("Liberty") to Vollers' motion seeking entry of an order, (i) enforcing the Sale Order (as defined in the Motion) against Liberty an ABI supplier on a Subcontract (as defined in the Motion), between ABI and Conti Enterprises, Inc. ("Conti"), (ii) determining that Liberty's claim against Conti's surety violates the Sale Order, (iii) requiring Liberty to withdraw its claim against Conti's surety, and (iv) granting related relief.

In its opposition, Liberty argues that the Sale Order entered by the Court on August 25, 2022, is not binding on Liberty because (i) section 363(f) of title 11, United States Code ("Bankruptcy Code") does not apply to Liberty because the Sale Motion did not provide clear notice to Liberty that its claims would be barred, and (ii) the Debtor did not provide Liberty with notice of the sale. Liberty's arguments are without merit as a matter of law and fact.

Under long-standing law, a creditor, like Liberty, is deemed to consent to the sale of assets under Section 363(f)(2) of the Bankruptcy Code if the creditor does not object to the sale. The Sale Motion and the form of Order submitted with the Sale Motion made clear that Liberty's rights as a subcontractor on the Non-Bonded Projects (as defined in the Sale Motion) would be affected and that Vollers intended to purchase the assets, close on the transaction and be entitled to all billed and unbilled contract balances on each of the Non-Bonded Projects free and clear of all claims, liens, encumbrances, and interests of any party, unless Vollers otherwise agreed.

Indeed, three of the Debtor's vendors and suppliers on Non-Bonded Projects clearly understood the terms of the Sale Motion, the Asset Purchase Agreement ("APA"), and the proposed Sale Order because they objected to Sale Motion and the form of Sale Order. The Debtor, Vollers and the objecting vendors/ suppliers ultimately resolved each objection, which resulted in additional language in the final Sale Order. Any suggestion that Liberty could not understand that its rights would be impacted is belied by the objections filed by other similarly situated vendors/ suppliers, each of which understood that their rights may be impacted unless they objected to the Sale Motion.

Finally, Liberty's claim that it did not receive notice is disingenuous for several reasons. First, the Debtor's books and records list only the address where the Debtor's counsel mailed the notices to Liberty. Second, Liberty's invoices to the Debtor reflect the <u>same</u> address. Third, Liberty's initial bond claim and its subsequent certified claims against Conti's bonding company lists the <u>same</u> address. Fourth, the certificates of service satisfied the requirements of Fed. R. Bankr. P. 2002(g)(2). Fifth, Liberty admits that it received subsequent correspondence at the address where the Sale Motion was mailed.

**STATEMENT OF PERTINENT FACTS**

On August 3, 2022 (the "Petition Date"), the Debtor commenced this Subchapter V Case by filing a voluntary petition for relief under chapter 11, subchapter v, of the Bankruptcy Code. Prior to the Petition Date, the Debtor ordered materials from Liberty in connection with the Debtor's subcontract with Conti for the project known as EWR-154.395 Terminal A Redevelopment ("Newark Airport Project"). Liberty filled the Debtor's material orders by delivering the materials directly to the Newark Airport Project. After Liberty delivered the materials, Liberty issued invoices to the Debtor. According to the Liberty's invoices, Liberty's

address is identified as 193 Christie Street, Newark, New Jersey ("Christie Street Address"). See LAM Cert. II at Exh. 1.

On the Petition Date, the Debtor filed its list of creditors that hold the 20 largest unsecured claims ("Top 20 List"). The Debtor identified Liberty as a top 20 trade creditor with an unsecured claim of $137,259. LAM Cert. II at Exh. 2. The Debtor noted the Christie Street Address as Liberty's address as reflected on the Debtor's books and records and Liberty's invoices. Id. At the same time the Debtor filed and served the Top 20 List, the Debtor filed its Creditor Matrix, which again identifies Liberty at the Christie Street Address. LAM Cert. at Exh. 3.

On August 5, 2022, the Debtor filed a Motion for Entry of Order (I) Authorizing the Sale of Certain of the Debtor's Assets to Vollers Excavating and Construction, Inc., (II) Approving Settlement, (III) Authorizing Debtor to Enter into Subcontracts with Vollers for Certain Non-Bonded Projects, and (IV) Authorizing the Debtor to Assume and Assign Certain Executory Contracts and Unexpired Leases (the "Sale Motion") [D.I. 25]. The Debtor also filed a motion for an order shortening time for the Court to consider the Sale Motion. [D.I. 29]

The Sale Motion provided that the sale to Vollers and transactions contemplated pursuant to the APA would be "authorized free and clear of all liens, claims and other interests" pursuant to Section 363(f) of the Bankruptcy Code. The Sale Motion summarized the terms of the APA between the Debtor and Vollers including but not limited Vollers' agreement to enter into subcontracts with the Debtor to complete Non-Bonded Projects (as defined in the Sale Motion) in consideration of Vollers' receipt of the Debtor's billed and unbilled contract balances on the Non-Bonded Projects. Id.

The Sale Motion further provided that "Vollers will assume a number of the Debtor's obligations and liabilities, including with respect to completing the Subcontracted Projects,

assuming certain, in its sole discretion, vendor and subcontractor claims, hiring the Debtor's non-union employees, and paying union benefits in connections with the Subcontracted Projects." Id. at ¶ 51 (emphasis added). This provision made clear that Vollers would, in its discretion, agree to assume certain vendor and subcontractor claims. The Sale Motion also made clear that "[i]f the Subcontracts are not authorized Vollers will not execute them, and all of the Non-Bonded Projects will be abandoned…."

The APA, which was attached as Exhibit A to the Sale Motion, defined Non-Bonded Projects on the first page of the APA as construction projects set forth on Schedule 1.01(a) of the APA. The very first project listed on Schedule 1.01(a) is the Newark Airport Project. Id. at Schedule 1.01(a). Section 1.04(i) of the APA specifically excludes any contractual obligation of the Debtor to any subcontractor, vendor or supplier related to the Non-Bonded Projects incurred by the Debtor prior to the Petition Date. Id.

Paragraph 3 of the proposed form of order that the Debtor submitted with the Sale Motion proposed, in pertinent part, that "the Asset Purchase Agreement and the transactions contemplated therein including the Sale of the Purchased Assets and the execution of the Subcontracts free and clear of any lien, claim or interest of any lien, claim, right, interest, and encumbrance including, but not limited to any lien, claim, right, interest and encumbrance of the Debtor's creditors, subcontractors, vendors, supplier and materialmen are hereby approved." [D.I. 25-2 at ¶3].

Paragraph 11 of the proposed order also provided, in the pertinent part, that all trade creditors, subcontractors, vendors, and suppliers "holding any liens, claims, rights, interest, or encumbrances of any kind or nature whatsoever against or in all or any portion of the Purchased Assets and Subcontracts…. arising under or out of, in connection with, or in any way relating to the Debtor, the Purchased Assets, the operation of the Debtor's business prior to the Closing Date

or the transfer of the Purchased Assets to the Buyer, hereby are forever barred, estopped and permanently enjoined from asserting, against the Buyer, any of its affiliates, successors or assigns, their property, owners on any of the Non-Bonded Projects or their sureties…." [Id. at ¶ 11].

On August 8, 2022, the Debtor filed a Certificate of Service for the Sale Motion and the Order Shortening Time Period for Notice Setting Hearing and Limited Notice, which set the Sale Motion hearing for August 22, 2022, and permitted parties to file objections up to the time of the hearing. LAM Cert. at Exh. 4. The Certificate of Service noted that the Debtor served the Sale Motion and accompanying shortening time application papers and Order Shortening Time on Liberty at the Christie Street Address. Id.

On August 18, 2022, Liberty sent a certified letter ("Cover Letter") to Conti's surety, Travelers Casualty and Surety Company of America ("Travelers") copying the Debtor, Conti and the Port Authority of New York/New Jersey ("Port Authority"), enclosing a Claim and Affidavit of Laborer Materialman or Subcontractor ("Bond Claim") asserting a bond claim against the payment bond Conti posted in favor of the Port Authority on the Newark Airport Project. See Certification of Jerry Manna dated January 20, 2023 ("Manna Cert."), at Exhibit 1. In the Cover Letter, Liberty identified the Christie Street Address as Liberty's address. Id. In the Bond Claim attached to the Cover Letter, which Mr. Manna verified under oath, Mr. Manna swore that Liberty's office is located at the Christie Street Address. Id.

After the Debtor served the Sale Motion and accompanying papers, Ralph Clayton & Sons, Inc. ("Clayton"), Pennsylvania Jersey Concrete Products, Inc. ("PJ Concrete") and J.M. Ahle Co., Inc. ("JM Ahle"), vendors on one or more of the Non-Bonded Projects defined in the Sale Motion, the proposed Sale Order, and the APA objected to the Sale Motion. Each vendor objected to the provision in the proposed Sale Order providing for the free and clear language as it pertained to

each and barring each from asserting claims in connection with the Non-Bonded Projects that impacted them. The Debtor, Vollers, Clayton, PJ Concrete and JM Ahle ultimately resolved the respective objections, which resulted in modified language in the Sale Order. [D.I. 87].

At the Sale Hearing, the Debtor, Vollers, the Chapter 5 Trustee, NGM Insurance Company, and numerous other parties appeared and spent several hours off the record resolving various additional objections to the Sale Motion. After the Sale Hearing, the Debtor's counsel transmitted a proposed final order relating to the Sale Motion together with a cumulative redline of comments/changes made to the proposed form of order submitted with the Sale Motion. LAM Cert. at Exh. 5. Notably, the provisions in the original sale order relating to the free and clear language and the barring vendor/supplier claims against owners on the Non-Bonded Projects and their sureties remained <u>unchanged</u>. <u>Id.</u> On August 25, 2022, the Court entered the Sale Order, which became final pursuant to its terms and provided Vollers with the protections it paid for. [D.I. 87].

On September 18, 2022, in violation of the Sale Order, Liberty submitted a Certificate of Proof of Claim to Travelers ("Proof of Claim"). In the Proof of Claim, Liberty identified Sue Meyers as its contact person and listed the <u>Christie Street Address</u> as Liberty's company address. The Proof of Claim was signed, under oath and penalty of perjury, by Suzann Merzinger, Credit Manager of Liberty. Manna Cert. at Exhibit 3.

Despite the identification of the <u>Christie Street Address</u> on (i) Liberty's invoices to the Debtor, (ii) the Debtor's books and records, (iii) Liberty's August 18, 2022, Cover Letter to Travelers, (iv) the Bond Claim, and (v) the Proof of Claim, Mr. Manna now certifies that the Christie Street Address is "purely sales oriented," and that despite the service of the Sale Motion at the Christie Street Address, neither he "nor others in the [Liberty] credit department or in

[Liberty's] departmental management were made aware of such motions for a lengthy period of time." Manna Cert. at ¶¶ 3 and 9. Mr. Manna further certifies that, if "any managers or departmental heads at [Liberty]" received the Sale Motion, they would have timely objected. Id. at ¶14.

Notably absent from Mr. Manna's certification is any suggestion that Liberty did not receive a copy of the Sale Motion at the Christie Street Address in early August 2022. Indeed, Mr. Manna's certification clearly reflects that at least one notice sent to the Christie Street Address did, in fact, reach his desk. By letter dated November 18, 2022, Vollers' counsel sent a letter to Liberty at the Christie Street Address. Manna Cert. at Exhibit 2. In paragraph 20 of the Manna certification, Mr. Manna certifies that his "first awareness of the [S]ale [M]otion was in or about November 2022, when [he] received a copy of [the November 18, 2022] letter sent to" the Christie Street Address. Based on this admission, notices sent to the Christie Street Address did, in fact, reach Liberty's "managers and departmental heads."

## LEGAL ARGUMENT

### POINT I

### LIBERTY IS DEEMED TO HAVE CONSENTED TO THE SALE PURSUANT TO BANKRUPTCY CODE SECTION 363(f)

A debtor is entitled to sell assets free and clear of any interest pursuant to Bankruptcy Code §§ 363(b) and (f). The term "interest" refers to obligations that are connected to, or arise from, the property being sold. *In re Trans World Airlines, Inc.*, 322 F.3d 283, 289-90 (2003)(quoting *Folger Adam Sec., Inc. v. DeMatteis/MacGregor, JV*, 209 F.3d 252 (3rd Cir. 2002)). In this case, Liberty's claim against the Debtor for unpaid goods delivered to the Newark Airport Project is clearly an interest in the Debtor's receivable from Conti and the Debtor's remaining contract

balance that Voller's acquired in the Sale Order. See also 11 U.S.C. §1109(b) (defining creditor as a party in interest with a right to be heard on any issue in the Bankruptcy case).

"Given adequate notice, failure to object to a § 363 sale has been found to constitute consent per § 363(f)(2) to a 'free and clear' sale of the nonobjector's interests in property being sold." *In re Christ Hospital*, 502 B.R. 158, 174 (Bankr.D.N.J. 2013), aff'd, *In re Christ Hospital*, 2014 U.S. Dist. LEXIS 128409 (D.N.J. 2014) (citing *In re Tabone, Inc.*, 175 B.R. 855, 858 (Bankr.D.N.J. 1994); *In re Elliot,* 94 Bankr. 343 (E.D.Pa. 1988)). See also *In re Shary,* 152 Bankr. 724 (Bankr. & N.D.Ohio 1993); *In re Gabel,* 61 Bankr. 661 (Bankr. W.D.La. 1985); *In re Szostek,* 886 F.2d 1405, 1413 (3d Cir. 1989); *FutureSource LLC v. Reuters, Ltd.*, 312 F.3d 281 (7th Cir. 2002) (stating that "lack of objection . . . counts as consent"); *In re Congoleum Corp.*, No. 03-51524, 2007 Bankr. LEXIS 1707, 2007 WL 1428477, at *1 (Bankr. D.N.J. May 11, 2007) (finding that "failure to object to a notice of sale free and clear is deemed consent to the sale for purposes of § 363(f)(2)"). Moreover, a proceeding under section 363 "transfers property rights, and property rights are rights good against the world, not just against parties to a judgment or persons with notice of the proceeding." *In the Matter of Met-L-Wood*, 861 F2d 1012, 1017 (7th Cir 1988)

In *Christ Hospital*, Judge Stern quoted *FutureSource*, wherein the Seventh Circuit made the following practical point for consent under section 363(f)(2) based on a failure to object:

> It is true that the Bankruptcy Code limits the conditions under which an interest can be extinguished by a bankruptcy sale, but one of those conditions is the consent of the interest holder, and lack of objection (provided of course there is notice) counts as consent. It could not be otherwise; transaction costs would be prohibitive if everyone who might have an interest in the bankrupt's assets had to execute a formal consent before they could be sold.
>
> And in any event the order approving a bankruptcy sale is a judicial order and can be attacked collaterally only within the tight limits that *Fed.R.Civ.P.* 60(b) imposes on collateral attacks on civil judgments. FutureSource [an entity whose

>interest in a financial database which was originally the subject of a contract with a bankruptcy provider] has made no effort to bring itself within those limits;….

*Id.* at 174 (quoting *FutureSource*, 312 F.3d at 285-86).

Relying on *FutureSource*, Judge Stern concluded that "[w]hat is clear and uncontroversial is that consent-based bankruptcy sale orders – even if wrong…are not subject to collateral attack." *Id.* (citing Fed.R. Civ. P. 60(b)).

In *Christ*, the Court denied a prepetition tort claimant's claim against a successful purchaser of the Debtor's assets pursuant to Bankruptcy Code section 363. The Court held that specific provisions of the sale order, like the Sale Order here, barred the tort claimant's claim noting that the sale order defined 363(f) "free and clear" aspects, explicitly provided protection from "liens and claims," provided protection to the successful bidder, and enjoined collateral attack of the sale order. *Id*. at 177.

Liberty's reliance on *In re Crumbs Bake Shop, Inc.*, 522 B.R. 766 (Bankr.D.N.J. 2014) for the proposition that the Sale Order is not binding on Liberty is misplaced. The Court in Crumbs addressed whether section 363(f) could extinguish the rights afforded to intellectual property licensees under section 365(n) if the licensees did not object to the sale order in that case. The court held that the interests of the licensees were not extinguished by the sale because a sale under the section 363(f) could not trump the rights of licensees under section 365(n). *Id.* at 774.

The court also held that the licensees did not consent to the sale because the sale motion and the asset purchase agreement did not provide adequate notice to the licensees that their rights would be impacted. The court noted that "[n]ot only is it unclear as to what was being sold, there is no clear discussion as to what rights were purported to be taken away as a result of the sale." The court also noted that the licensees "had no apparent reason to believe that an objection would be necessary in order to retain their rights under §365(n)," particular due to the fact that licensing

agreements on the seller disclosure schedule excluded the agreements from the assets being sold. Id. The court concluded that "[n]owhere in the debtor's sale motion or supporting submissions did debtors state anything about the treatment of the Licensees in particular, or the effect the sale would have on their rights." Id.

Unlike the sale motion and asset purchase agreement in Crumbs, the Sale Motion, the APA and the proposed Sale Order made clear that Vollers purchase of the assets and its agreement to enter into the subcontracts on the Non-Bonded Projects were free and clear of all "liens, claims and other interests" pursuant to Section 363(f) of the Bankruptcy Code. The Sale Motion summarized the terms of the APA between the Debtor and Vollers including but not limited Vollers' agreement to enter into subcontracts with the Debtor to complete Non-Bonded Projects in consideration of Vollers' receipt of the Debtor's billed and unbilled contract balances on the Non-Bonded Projects. Id.

The Sale Motion further provided that "Vollers will assume a number of the Debtor's obligations and liabilities, including with respect to completing the Subcontracted Projects, assuming certain, in its sole discretion, vendor and subcontractor claims, hiring the Debtor's non-union employees, and paying union benefits in connections with the Subcontracted Projects." [D.I.___. at ¶ 51 (emphasis added). This provision made clear that Vollers would, in its discretion, agree to assume certain vendor and subcontractor claims. The Sale Motion also made clear that "[i]f the Subcontracts are not authorized Vollers will not execute them, and all of the Non-Bonded Projects will be abandoned…."

The APA defined Non-Bonded Projects on the first page of the APA as construction projects set forth on Schedule 1.01(a) of the APA. The very first project listed on Schedule 1.01(a) is the Newark Airport Project. Id. at Schedule 1.01(a). Section 1.04(i) of the APA specifically

excludes any contractual obligation of the Debtor to any subcontractor, vendor or supplier related to the Non-Bonded Projects incurred by the Debtor prior to the Petition Date. Id.

Paragraph 3 of the proposed form of order proposed, in pertinent part, that "the Asset Purchase Agreement and the transactions contemplated therein including the Sale of the Purchased Assets and the execution of the Subcontracts free and clear of any lien, claim or interest of any lien, claim, right, interest, and encumbrance including, but not limited to any lien, claim, right, interest and encumbrance of the Debtor's creditors, subcontractors, vendors, supplier and materialmen are hereby approved." [D.I. 25-2 at ¶3].

Paragraph 11 of the proposed order also provided, in the pertinent part, that all trade creditors, subcontractors, vendors, and suppliers "holding any liens, claims, rights, interest, or encumbrances of any kind or nature whatsoever against or in all or any portion of the Purchased Assets and Subcontracts…. arising under or out of, in connection with, or in any way relating to the Debtor, the Purchased Assets, the operation of the Debtor's business prior to the Closing Date or the transfer of the Purchased Assets to the Buyer, hereby are forever barred, estopped and permanently enjoined from asserting, against the Buyer, any of its affiliates, successors or assigns, their property, owners on any of the Non-Bonded Projects or their sureties…." [Id. at ¶ 11].

The Sale Motion, the APA, and the proposed form of order submitted with the Sale Motion made clear that Vollers intended to purchase the assets and finish the Debtor's Non-Bonded Projects free and clear of any claim by any subcontractor or vendor unless Vollers agreed to assume any such claim. More importantly, the fact that three of the Debtor's vendors and suppliers on the Non-Bonded Projects, including Clayton, PJ Concrete, JM Ahle, received the Sale Motion, the APA and proposed form of order and objected to the Sale Motion, is clear evidence that Liberty received adequate notice that its rights would be affected by the Sale Motion. Finally, based on

Mr. Manna's certification, Liberty never read the Sale Motion, the APA and Sale Order prior to the entry of the final Sale Order. Liberty's argument is therefore an after-the-fact argument that the Court should ignore.

## POINT II

## LIBERTY RECEIVED ACTUAL NOTICE OF THE SALE MOTION

Fed. R. Bankr. P. 2002(a)(2) provides, in pertinent part, that all creditors are entitled to notice of a proposed sale of property of the estate. Rule 2002 (g)(2) provides, in pertinent part, that "if a creditor… has not filed a request designating a mailing address under Rule 2002(g)(1) or Rule 5003(e), the notices shall be mailed to the address shown on the list of creditors or schedule of liabilities…." Fed. R. Bankr. P. 9014(b) provides that "[a]ny paper served after the motion shall be served in the manner provided by Rule 5(b) of the F.R.Civ.P." Fed.R.Civ.P. 5(b)(2)(C) provides that a party is served by "mailing it to the person's last known address-in which event service is complete upon mailing."

In this case, Liberty admits that the Sale Motion was mailed to the Christie Street Address. It claims, however, that the Debtor's service of the Sale Motion was not adequate service because none of Liberty's officers, departmental managers or administrators are located at the Christie Street Address. Liberty's position that service was not adequate is belied by (i) Liberty's invoices to the Debtor, (ii) the Debtor's books and records, (iii) the Cover Letter to Travelers, (iv) the Bond Claim, (v) Liberty's Proof of Claim to Travelers, and (vi) Liberty's admission that it received the November 18, 2022, letter that Voller's counsel sent to the Christie Street Address. The Debtor clearly satisfied the notice requirements of Rules 2002 and 9014.

Equally unavailing is Liberty's claim that it should have received notice of the modified Sale Order. Based on the cumulative redlined changes submitted to the Court on August 24, 2022,

the provisions that affected Liberty's rights remained unchanged between the original draft sale order submitted and the final order entered by the Court. See LAM Cert. at Exh. 5. In addition, the provisions of the APA that affected Liberty did not change.

## CONCLUSION

**WHEREFORE**, Vollers respectfully requests that the Court (i) enforce the Sale Order against Liberty, (ii) determine that Liberty's claim against Conti's surety violates the Sale Order, (iii) direct Liberty to withdraw it claim against Conti's bonding company, and (iv) award Vollers' attorneys' fees and costs after the Court has an opportunity to review Vollers' counsel's certification of services.

Dated: January 27, 2023                                Respectfully submitted,

**TRIF & MODUGNO, LLC**

/s/   *Louis A. Modugno*
Louis A. Modugno
89 Headquaters Plaza
North Tower, Suite 1201
Morristown, New Jersey 07960
(973) 547-3611
lmodugno@tm-firm.com