# **<u>EXHIBIT A</u>**

Volvo Car
Financial Services

# NEW JERSEY MOTOR VEHICLE LEASE AGREEMENT

**Lease Date: 12/17/2019**

| LESSEE (and CO-LESSEE, if any): | LESSEE'S GARAGING ADDRESS (where the Vehicle will be principally located): | LESSOR (Dealer Name, Address and Phone Number): |
|---|---|---|
| ASSUNCAO BROS INC. <br> MARTIN ASSUNCAO <br> PLACE OF RESIDENCE: <br> 29 WOOD AVENUE <br> EDISON, NJ 08820 | N/A | SMYTHE VOLVO CARS <br> 40 River Rd <br> Summit, NJ 07901 |

This is an agreement to lease (the "Lease") the vehicle described below ("Vehicle"). Lessor owns the Vehicle throughout the term of the Lease. Dealer is assigning this Lease and Vehicle to VCFS Auto Leasing Company ("Assignee"), and you agree to that assignment. In this Lease, "you" and "your" refer to any person signing this Lease as Lessee or Co-Lessee. "Lessor", "we", "us" and "our" refer to Dealer and any Assignee. The consumer lease disclosures included in this Lease are made on behalf of Dealer, Assignee and are also made on behalf of Volvo Car Financial Services U.S., LLC ("VCFS"), who will administer the Lease. For purposes of the Federal Consumer Leasing Act only, VCFS should also be considered a Lessor. The address for Assignee is P.O. Box 91300, Mobile, AL 36691-1300 and the phone number for assignee is 855-537-3334.

## DESCRIPTION OF LEASED VEHICLE

| [X] New = (Manufacturer's Suggested Retail Price: $ 59,495.00 ) <br> [ ] Used | Year <br> 2020 | Make & Model <br> VOLVO XC60 | Body Style <br> T5 AWD INSCRIP | Vehicle Identification Number <br> YV4102RLXL1496160 | Mileage on Odometer <br> 50 |
|---|---|---|---|---|---|

Primary use of Vehicle is for Personal, Family, or Household purposes unless the following box is checked: [ ] Primary Use of Vehicle is for Business, Commercial, or Agricultural purpose.
If the mileage on odometer disclosed above is higher than 1,000 miles.
The prior use of the Vehicle is: [ ] personal, family or household [ ] demonstrator [ ] livery [ ] daily rental [ ] police [ ] prior wreckage [ ] unknown

| No. Cylinders | Transmission | Brakes | Steering | Air Conditioning |
|---|---|---|---|---|
| N/A | [X] Automatic <br> [ ] Manual | [X] Power-assisted <br> [ ] Manual | [X] Power-assisted <br> [ ] Manual | [X] Yes <br> [ ] No |

## DESCRIPTION OF TRADE-IN VEHICLE

| Year | Make & Model | Vehicle Identification Number |
|---|---|---|
| N/A | | N/A |

## FEDERAL CONSUMER LEASING ACT DISCLOSURES

**1. Amount Due at Lease Signing or Delivery** (Itemized below)*

$ 680.81

**2. Monthly Payments**

Your first Monthly Payment of $ 680.81 is due on 12/17/19, followed by 35 payments of $ 680.81 due on the 17 of each month. The total of your Monthly Payments is $ 24,509.16

**3. Other Charges** (not part of your Monthly Payment)

Vehicle Turn-in Fee (if you do not purchase the Vehicle) $ 350.00
N/A $ N/A
N/A $ N/A
Total $ 350.00

**4. Total of Payments** (The amount you will have paid by the end of the Lease)

$ 24,859.16

(Section 1 plus Section 2 total plus Section 3 total minus Sections 5(b) and 5(c).)

## ITEMIZATION OF AMOUNT DUE AT LEASE SIGNING OR DELIVERY

**5. Amount Due at Lease Signing or Delivery:**

| | | |
|---|---|---|
| a. | Capitalized cost reduction | $ N/A |
| b. | First Monthly Payment | 680.81 |
| c. | Refundable security deposit | N/A |
| d. | Title fees | N/A |
| e. | Registration fees | N/A |
| f. | Sales/Use tax | N/A |
| g. | N/A | N/A |
| h. | N/A | N/A |
| i. | N/A | N/A |
| | Total $ | 680.81 |

**6. How the Amount Due at Lease Signing or Delivery will be paid:**

| | | |
|---|---|---|
| a. | Net trade-in allowance | $ N/A |
| b. | Rebates and noncash credits | 680.81 |
| c. | Amount to be paid in cash | N/A |
| d. | N/A | N/A |
| | Total $ | 680.81 |

## YOUR MONTHLY PAYMENT IS DETERMINED AS SHOWN BELOW

**7. Gross Capitalized Cost.** The agreed upon value of the Vehicle ($ 51,883.77 ) and any items you pay over the Lease term (such as service contracts, insurance, and any outstanding prior credit or lease balance) $ 56,428.38

**8. Capitalized Cost Reduction.** The amount of any net trade-in allowance, rebate, noncash credit, or cash you pay that reduces the Gross Capitalized Cost - $ N/A

**9. Adjusted Capitalized Cost.** The amount used in calculating your Base Monthly Payment = $ 56,428.38

**10. Residual Value.** The value of the Vehicle at the end of the Lease used in calculating your Base Monthly Payment - $ 36,291.95

**11. Depreciation and Any Amortized Amounts.** The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease term = $ 20,136.43

**12. Rent Charge.** The amount charged in addition to the Depreciation and Any Amortized Amounts + $ 4,372.73

**13. Total of Base Monthly Payments.** The Depreciation and Any Amortized Amounts plus the Rent Charge = $ 24,509.16

**14. Lease Payments.** The number of payments in your Lease ("Lease Term": 36 months) + 36

**15. Base Monthly Payment** = $ 680.81

**16. Monthly Sales/Use Tax** + $ N/A

**17. N/A** + $ N/A

**18. N/A** + $ N/A

**19. N/A** + $ N/A

**20. Total Monthly Payment ("Monthly Payment")** = $ 680.81

**21. Early Termination.** You may have to pay a substantial charge if you end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.

**22. Excessive Wear and Use.** You may be charged for excessive wear based on our standards for normal use and for mileage in excess of 10000 miles per year at the rate of 25 cents per mile.

**23. Purchase Option at End of Lease Term.** You have an option to purchase the Vehicle at the end of the Lease Term for $ 36,291.95 and a purchase option fee of $ 350.00

**24. Other Important Terms.** See your Lease documents for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

VCFS MVLA NJe 01/19     **VCFS Auto Leasing Company**     Lessee's Initials: _____ / Co-Lessee's Initials: _____     Page 1 of 6

## 25. ITEMIZATION OF GROSS CAPITALIZED COST

| | | | | | |
|---|---|---|---|---|---|
| a. | Agreed upon Value of Vehicle | $ 51,883.77 | h. | Acquisition Fee | $ 995.00 |
| b. | Sales/Use Tax | $ 1,689.66 | i. | | $ N/A |
| c. | License, Title, and Registration Fees | $ 416.20 | j. | | $ N/A |
| d. | Outstanding Prior Credit or Lease Balance | $ N/A | k. | | $ N/A |
| e. | Dealer Documentation/Service Fee | $ 456.75 | l. | TIRE & WHEEL | $ 987.00 |
| f. | Optional Excess Wear & Use Waiver** | $ N/A | | | |
| g. | Optional Service Contract | $ N/A | m. | Total = Gross Capitalized Cost | $ 56,428.38 |

**Check the appropriate box: Lessee [ ☐ accepts/ ☒ declines] the offer to purchase an optional Excess Wear & Use Waiver.

**26. OFFICIAL FEES AND TAXES.** The total estimated amount you will pay for official and license fees, registration, title, and taxes over the term of your Lease, whether included with your Monthly Payments or assessed otherwise: $ 2,907.86 . The actual total of fees and taxes may be higher or lower depending on the tax rates in effect or the value of the Vehicle at the time a fee or tax is assessed.

**27. LATE CHARGE:** To the extent permitted by law, you will pay us a late charge of the lesser of **$20** or **5%** of the unpaid portion of any Monthly Payment that is not received within 15 days after it is due.

**28. WARRANTIES:** If the Vehicle is new, the Vehicle is covered by the manufacturer's standard new car warranty. If the Vehicle is not new, there is no express warranty on the Vehicle unless indicated below.

☐ Used vehicle limited warranty provided by the manufacturer.     ☒ Remainder of standard new vehicle limited warranty provided by the manufacturer.

LESSOR LEASES THE VEHICLE TO YOU "AS IS", EXCEPT AS PROVIDED IN THIS LEASE (AND UNLESS PROHIBITED BY LAW), WE MAKE NO EXPRESS OR IMPLIED WARRANTIES OR REPRESENTATIONS AS TO THE VEHICLE'S (OR ANY OF ITS PARTS OR ACCESSORIES) CONDITION, MERCHANTABILITY, SUITABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE AND WE MAKE NO OTHER REPRESENTATIONS OR WARRANTIES WHATSOEVER.

## 29. INSURANCE VERIFICATION

You affirm that the following insurance coverage is in force as of the Lease Date:

| Insurance Provider: | Policy Number: | Effective Date: | Expiration Date: |
|---|---|---|---|
| PENN NATIONAL SECURITY | AX90756148 | 12/17/19 | 06/07/20 |

| Agent's Name: | Agent's Address: | Agent's Phone Number: |
|---|---|---|
| INSURANCE OFFICE OF AMERI | , | |

Unless the Vehicle has been placed on fleet coverage, you must instruct your insurance agent to add as an additional loss payee, and send the Insurance Policy, Endorsement, or Certificate to: _____ P.O. Box 91300, Mobile, AL 36691-1300 _____ VCFS Auto Leasing Company.                    Initials of Dealer Employee who verified insurance coverage ____

**New Jersey Consumer Protecting Leasing Act Disclosures**

TOTAL COST OF LEASE: The total cost of this Lease is $ 61,151.11 , which is the sum of: (i) the Amount Due at Lease Signing, minus the first Monthly Payment and any refundable security deposit; plus (ii) the total of your Monthly Payments; plus (iii) the Purchase Price, plus (iv) the Purchase Option Fee. This amount assumes there is no default and that you purchase the Vehicle from Assignee at the scheduled end of the Lease term and excludes any official fees and taxes, such as sales tax, registration or licensing, or other amounts that may be become due under this Lease because of conditions that are not known at Lease signing.

**VEHICLE MAINTENANCE, USE AND INSURANCE**

**30. MAINTENANCE, REPAIRS AND OPERATING EXPENSES.** You are responsible for and agree to pay for all maintenance and repairs to keep the Vehicle in good working order and condition and any other expenses associated with operating the Vehicle. You agree to service the Vehicle according to the manufacturer's recommendations as outlined in the owner's manual for the Vehicle and, if applicable, the maintenance schedule folder, and as requested by the manufacturer in any recall campaign, and you will complete all necessary service records.

**31. STANDARDS FOR WEAR AND USE.** Excessive wear and use includes: (a) glass that is damaged or that you have tinted; (b) damaged body, frame, fenders, metal work, trim or paint; (c) missing wheel covers, jack or wheel wrench; (d) torn dash, floor covers, seats, headliners, upholstery or interior work or trunk liners; (e) any tires (including spare) that are missing, not of comparable quality to the originals or with less than 4/32 inch of tread remaining; (f) damage from water, hail or sand; (g) any damage that makes the Vehicle either unsafe or unlawful to operate; (h) mechanical or electrical parts that do not work properly; or (i) any other damage, whether or not covered by insurance, that would cost more than $50 to repair or replace.

If the odometer was tampered with or otherwise does not work correctly and you cannot prove the mileage shown on the odometer, you agree to pay the greater of fifteen percent (15%) of the Residual Value or the amount we estimate the Vehicle's fair market value has been reduced by reason of additional miles not reflected on the odometer, the inability to determine the Vehicle's actual mileage, or both.

**32. USE AND SUBLEASING.** You agree that:
a. Only authorized licensed drivers will operate the Vehicle;
b. Neither you nor any other person will operate the Vehicle while under the influence of alcohol, illegal narcotics or prescription or non-prescription drugs if the instructions prohibit operating a motor vehicle;
c. You will keep the Vehicle free of all fines, liens and encumbrances and if you do not, any amounts paid by us shall be an additional amount owed by you under this Lease;
d. You will not use the Vehicle illegally or improperly to transport passengers or goods for hire, or in any way prohibited by any applicable insurance policy or manufacturer's warranty or in a manner that causes abnormal depreciation;
e. Except for 30 days or less to Canada, you will not remove the Vehicle from the United States;
f. You will not alter, mark or install equipment in the Vehicle without our consent;
g. **You will not assign, transfer, sublease, rent or pledge this Lease or the Vehicle without our written consent, nor will you interfere with our ownership of the Vehicle; and**
h. **You are responsible for the risk of loss, damage, or destruction of the Vehicle during the Lease Term and until you return the Vehicle to us.**

**33. NOTICE OF ACCIDENTS AND COOPERATION.** You agree to cooperate fully with us and any insurance company in the investigation and defense of any and all claims arising from possession and use of the Vehicle. You will make a complete report to Assignee within 48 hours after any accident, theft or loss involving the Vehicle. You will comply with all laws and regulations requiring the reporting of accidents, thefts or loss involving the Vehicle.

**34. INSURANCE: REQUIRED PUBLIC LIABILITY AND PHYSICAL DAMAGE INSURANCE.** During the term of this Lease you must ensure that Public Liability and Physical Damage Insurance on the Vehicle covers both you and us. The coverage must be not less than **$100,000/$300,000** bodily injury, **$50,000** property damage and physical damage coverage or a combined single limit of **$500,000** for bodily injury and property damage for any one accident and physical damage coverage with deductibles not to exceed $1,000 for collision and $1,000 for comprehensive. Named Driver Exclusions or other Named Driver or other non-standard limiting endorsements are NOT acceptable. NO OTHER TYPES OF INSURANCE ARE REQUIRED BY US. Unless the Vehicle is eligible for placement on fleet coverage, and you have paid for the Vehicle to be placed under such coverage, the following notice in all capital letters applies:

YOU AGREE THAT YOUR OWN LIABILITY AND PERSONAL INJURY PROTECTION INSURANCE WILL PROVIDE PRIMARY INSURANCE COVERAGE UP TO ITS FULL POLICY LIMITS UNDER THE AGREEMENT.

THE VALID AND COLLECTIBLE LIABILITY INSURANCE AND PERSONAL INJURY PROTECTION INSURANCE OF ANY AUTHORIZED LEASING DRIVER IS PRIMARY FOR THE LIMITS OF LIABILITY AND PERSONAL INJURY PROTECTION.

Assignee must be named as "additional insured" and "loss payee" on any insurance policy you maintain. Each such policy must provide that Assignee will be notified in writing at least 10 days before the insurance policy required under this Lease, (ii) the deductible and any other subtractions from the actual cash value under such insurance policy, (iii) all Monthly Payments due, and all other amounts due, under this Lease and not paid up to the date where the Vehicle is declared a total loss. If the Vehicle is a total loss and the requirements of this Section 36(a) are not satisfied, you will owe the Standard Early Termination Charge, less the Turn-in Fee, in the event of an insurable loss. You have the option of furnishing the required amount of insurance either (i) through any existing policies owned or controlled by you and issued by a carrier reasonably acceptable to us; (ii) by purchasing the required coverage separately through any insurer reasonably acceptable to us; or (iii) if the Vehicle is eligible for placement on fleet coverage, by paying for such coverage at lease inception. We will credit you with the proceeds of any insurance that we receive for any loss.

**If the insurance on the Vehicle lapses and/or you have not paid for such coverage, we reserve the right to, but shall have no obligation to, place insurance on the Vehicle covering our interest only or, in our discretion, both our interest and your interest and charge you for the portion of the premium attributable to the required coverage.**

**DEFAULT**

**35. DEFAULT.** You will be in default of this Lease ("Default") if any of the following occur:
a. You do not make a payment when it is due;
b. You or any of your property becomes the subject of a proceeding (voluntary or involuntary) in bankruptcy;
c. You become incompetent or die (if a natural person) or dissolve (if not a natural person) except that there shall be no default if your surviving spouse continues to make payment to us in accordance with the terms of the Lease;
d. Any information in your Lease Application (including driver information) is materially false or misleading;
e. The Vehicle is stolen, lost, destroyed, seized or confiscated or is otherwise rendered unavailable or unsuitable for use or is declared a total loss;
f. **You assign, transfer, sublease, rent or pledge this Lease or the Vehicle without our permission or otherwise violate Section 32;**
g. You otherwise fail to comply with any other term, provision or condition of this Lease or fail to keep any other promise made to us;
h. If at any time you appear on the list of Specially Designated Nationals and Blocked Persons published by the U.S. Treasury Department's Office of Foreign Assets Control, or any other similar or successor list containing names of persons with whom we cannot do business, or we are prohibited at any time by any federal or state law, rule, regulation or order from doing business with you;
i. Anything else happens that adversely affects our interest in the Vehicle or your ability to comply with obligations under the Lease; or
j. You do anything the law says is a default.

We may terminate the Lease prior to the scheduled termination date of this Lease if you are in Default.

**36. WHAT YOU OWE UPON DEFAULT.**
a. **Early Termination Because of Total Loss.** If you suffer a total loss of the Vehicle, you are in Default, the Lease terminates and you are obligated to notify the insurer of the Vehicle and to coordinate with the insurer of the Vehicle to ensure payment

by the insurer of the Vehicle on the claim to us. If you have complied with all other provisions of this Lease, and the Vehicle is declared a total loss by the insurer of the Vehicle, you will owe us nothing more once we have received (i) all of the insurance proceeds due under the insurance policy required under this Lease, (ii) the deductible and any other subtractions from the actual cash value under such insurance policy, (iii) all Monthly Payments due, and all other amounts due, under this Lease and not paid up to the date where the Vehicle is declared a total loss. If the Vehicle is a total loss and the requirements of this Section 36(a) are not satisfied, you will owe the Standard Early Termination Charge, less the Turn-in Fee.
b. **Early Termination Because of Any Other Default.** If we terminate this Lease because of any other Default, then you agree that you will owe us: (i) the Standard Early Termination Charge (see Section 38(a)); (ii) all collection, repossession, storage, preparation and sale expenses of the Vehicle to the extent permitted under applicable law; (iii) if permitted by applicable law, attorneys' fees and disbursements incurred after Default and referral to an attorney who is not our salaried employee, not to exceed 15% of the amount you owe us (or such lesser rate as may be required under applicable law); and (iv) simple interest at a rate of **15%** per annum (or such lesser rate as may be required under applicable law) on all expenses incurred by us and all obligations that you owe after termination, other than earned but unpaid Rent Charges.

**37. OUR RIGHTS AND REMEDIES IF YOU DEFAULT.** If you are in Default we will have, in addition to all of the rights and remedies provided by this Lease and by law, the right to sue you for damages and/or recovery of the Vehicle. We also may take the Vehicle from you without demand if permitted by law (or, if demand is required by law, upon compliance with such legal requirements). You agree that we may enter your property or the property where the Vehicle is stored in order to take it, so long as it is done peaceably. If there is any personal property in the Vehicle when we take the Vehicle from you, we may take the personal property and store it for you. If we take the Vehicle you will not be released from any obligation under this Lease.

**38.   EARLY TERMINATION.**

**a.   Standard Early Termination**

Your Standard Early Termination Charge is calculated as follows:

(i)   the Base Monthly Payment times the number of Monthly Payments not yet made, PLUS

(ii)   any other amounts unpaid by you, including Late Charges as described in Section 27, other than excess mileage and excessive wear and use charges, arising under this Lease and not prohibited by applicable law, PLUS

(iii)   any official fees and taxes related to the termination of this Lease, PLUS

(iv)   the Residual Value, PLUS

(v)   the Vehicle Turn-in Fee, MINUS

(vi)   the "Realized Value" of the Vehicle (as specified below), MINUS

(vii)   the unearned Rent Charge calculated in accordance with an actuarial method. Under this method of determining the unearned Rent Charge, the monthly Rent Charges (including those for the month in which the early termination occurs) are earned in advance on the scheduled due dates of your Monthly Payments and your Monthly Payments are deemed to have been received on their scheduled due dates.

The "Realized Value" of the Vehicle is the price we receive at the time of disposition of the Vehicle. For this purpose, we shall sell the Vehicle at wholesale or otherwise determine its wholesale value in a commercially reasonable manner. As an alternative, you may obtain (at your expense) from a qualified independent appraiser acceptable to us a written appraisal of the wholesale value of the Vehicle that could be realized at sale. This appraised value will be final and binding on you and us.

**b.   Voluntary Early Termination**

If you are not in Default, upon prior notice to us, you may terminate this Lease prior to the scheduled termination date of the Lease. If you do so, and if you do not exercise your purchase option at that time, you will owe us the Standard Early Termination Charge.

Alternatively, at your option, instead of the Standard Early Termination Charge, you may elect to owe the Remaining Payments Termination Charge, calculated as follows: the sum of (a) all scheduled Monthly Payments from the termination date through the scheduled maturity date of the Lease, PLUS (b) any unpaid amounts owed by you, PLUS (c) any excess mileage charge, PLUS (d) the appraised cost of such repairs or replacements needed because of excessive wear or use regardless of whether such repairs or replacements are made in order to put the Vehicle in good working order and condition, PLUS (e) the Vehicle Turn-in Fee.

**39.   RETURN OF VEHICLE AT SCHEDULED TERMINATION DATE.** This Lease is scheduled to terminate 1 month after the last Monthly Payment is due. At the end of the Lease Term, you may either purchase the Vehicle from the Assignee (see Section 40) or return the Vehicle to an authorized Volvo retailer in good condition, without damage, excessive wear or use (see Sections 22 & 31) and without excessive mileage (see Section 22), and you will pay any amount you owe under this Lease, plus the Vehicle Turn-in Fee. You also agree to pay (a) the appraised cost of such repairs or replacements needed because of excessive wear or use (see Sections 22 & 31) regardless of whether such repairs or replacements are made in order to put the Vehicle in good working order and condition and (b) any excess mileage charge as described in Section 22.   **RIGHT TO APPRAISAL. YOU MAY OBTAIN AT THE END OF THE LEASE TERM, AT YOUR EXPENSE, A PROFESSIONAL APPRAISAL OF THE AMOUNT REQUIRED TO REPAIR OR REPLACE PARTS OR THE AMOUNT WHICH THE EXCESSIVE WEAR AND DAMAGE REDUCES THE VALUE OF THE VEHICLE. THIS PROFESSIONAL APPRAISAL SHALL BE PERFORMED BY AN INDEPENDENT THIRD PARTY AGREED TO BY YOU AND US AND IT SHALL BE FINAL AND BINDING.** Unless you

and the Assignee have agreed to extend the Lease Term, you may not keep possession of the Vehicle past the date of termination. You are in Default if you keep possession of the Vehicle past the termination date and, in addition to the Remedies set forth in Section 37, you will be responsible for damages incurred by Lessor and you will owe an amount equal to the Monthly Payment for each part of a month and each month past the termination date until the Vehicle is repossessed or delivered to Lessor. The Turn-in Fee will be waived if you simultaneously replace this Lease with another lease or retail installment contract through VCFS Auto Leasing Company or VCFS, respectively. In addition, if you decline your purchase option but a third-party, promptly at lease termination, pays the Assignee for the Vehicle in an amount equal to the Residual Value plus the Turn-in Fee, the Assignee will waive any excess wear and excess mileage charges.

**40.   PURCHASE OPTION AT END OF LEASE TERM.** (a) You have the option to purchase the Vehicle "AS IS" directly from the Assignee for cash or a cash equivalent such as a certified check, a wire transfer or an ACH transfer sent directly by you at the scheduled termination of this Lease, provided all sums due under this Lease have been paid by you and you notify the Assignee 15 days prior to the scheduled termination of this Lease. The price you will pay the Assignee will be the Residual Value PLUS a purchase option fee in the amount set forth in Section 23 and any official fees and taxes charged in connection with the purchase of the Vehicle. (b) If you do not wish to, or are unable to, exercise the purchase option in the manner set forth in Section 40(a), your purchase option will be considered declined, and the Lease will expire in accordance with the terms contained therein. You acknowledge and agree that: (i) if you subsequently purchase the Vehicle without paying the full amount owed directly to the Assignee in cash or a cash equivalent as set forth in Section 40(a), you are not exercising a right under this Lease or purchasing the Vehicle from the Assignee, and (ii), the Assignee is not a party to that subsequent agreement and makes no offer to you with respect to the any of the terms of that subsequent purchase, including the price and any documentary, inspection or other fees or charges you pay.

**41.   OPTION TO PURCHASE LEASED VEHICLE PRIOR TO THE END OF THE LEASE.** Prior to the scheduled termination of this Lease and provided you are not in Default, then, upon prior notice, you have the option to purchase the Vehicle "AS IS" directly from the Assignee for cash or a cash equivalent such as a certified check, a wire transfer or an ACH transfer sent directly by you for the following amount: (a) the Base Monthly Payment times the number of Monthly Payments not yet made, PLUS (b) the Residual Value, PLUS (c) an early purchase-option fee equal to the amount of the end of Lease Term purchase option fee set forth in Section 23, MINUS (d) the unearned Rent Charge calculated in accordance with an actuarial method. Under this method of determining the unearned Rent Charge, the monthly Rent Charges (including those for the month in which the early termination occurs) are earned in advance on the scheduled due dates of your Monthly Payments and your Monthly Payments are deemed to have been received on their scheduled due dates. You will also owe any official fees and other taxes charged in connection with the purchase of the Vehicle.

**42.   SECURITY DEPOSIT.** You agree to pay a refundable security deposit as indicated in Section 5(c). We will deduct from such deposit any charges you may owe under this Lease. We may retain the security deposit until all amounts you owe under this Lease are paid. We will refund to you any part of the security deposit that is left. No interest, increase, or profits will accrue to you on the security deposit while held by us. We may commingle the security deposit with our own funds. We have no fiduciary obligation with respect to the security deposit.

**43.   ODOMETER DISCLOSURE. Notice:** Federal law requires you to give us a statement of the Vehicle's mileage in connection with a transfer of Vehicle ownership. You may be fined and/or imprisoned if you do not complete the disclosure or if you make a false statement.

**44.   ASSIGNMENT BY US.** You agree that Assignee and any future assignee of this Lease may pledge or reassign this Lease and ownership of the Vehicle and any of its benefits or burdens except as otherwise provided by applicable law. You agree that neither the Assignee nor VCFS (if it is not the Assignee) shall have to make repairs to the Vehicle, maintain the Vehicle, obtain any insurance or perform any other service the Dealer has agreed to perform under this Lease; and you will look directly to the Dealer for these services.

**45.   LIMITATION OF LIABILITY.** We shall not be liable for any loss of profits or other indirect or consequential damages or inconveniences (except for those relating to personal injury) which may result to you from any damages to, or defect in, the Vehicle or for the time needed to repair or service the Vehicle. Monthly Payments shall continue and not be reduced or delayed during this time.

**46.   RETURNED CHECK CHARGE, FINES AND FEES.** You also agree to pay a check collection charge of $15, plus the amount charged by the financial institution for each check, draft or other form of payment which is returned or dishonored for any reason except as limited by applicable law. You will pay when due any official fee or fine imposed on this Vehicle, such as a toll charge, parking ticket, traffic or toll violation. Should we have to pay any such fee or fine on your behalf, you will pay us the amount of the fine or fee plus a $20 administrative charge, or such other charge as allowed by the law, plus any applicable taxes.

**47.   LICENSE, REGISTRATION, TAXES AND INSPECTION.** You agree to pay for titling, registration and licensing and for all inspections of the Vehicle required by any government authority during the Lease Term. YOU WILL ALSO PAY ALL EXCISE, USE, PERSONAL PROPERTY, GROSS RECEIPTS AND OTHER TAXES INCURRED DURING THE TERM OF THIS LEASE WITH RESPECT TO THE VEHICLE EXCEPT THOSE LEVIED ON OUR NET INCOME. The taxes you must pay will either be included in the payments you make under this Lease or separately billed to you by Lessor. Lessor

may change your Monthly Payment for increases or decreases in taxes.

**48.   INSPECTION.** You agree to allow us to inspect the Vehicle at any reasonable time and place. If we ask to inspect the Vehicle, you will tell us the location of the Vehicle. Any inspection will be solely for our benefit.

**49.   INDEMNIFICATION.** You agree to indemnify and hold us, our affiliates, assignees, pledgees, agents and employees harmless from all losses, liability, damages, injuries, claims, demands and expenses arising out of the condition, maintenance, use or operation of the Vehicle.

**50.   SEVERABILITY AND CHOICE OF LAW.** If any part of this Lease is not valid according to any applicable law, all other parts nevertheless will remain enforceable. The law of the state of New Jersey will govern this Lease.

**51.   HEIRS AND REPRESENTATIVES.** This Lease will bind and benefit you, your heirs, representatives and successors and will also bind and benefit us and our successors and assigns.

**52.   NOTICES.** All notices to you will be made to the last address provided to us in writing. All notices to us must be made in writing to the respective addresses set forth on the first page of this lease or to such other address as we provide in writing.

**53.   CELL PHONES AND E-MAIL.** If you give us a cellular or mobile telephone number, you acknowledge that by doing so you consent to the use of that telephone number to call you or to send you a text message on your cellular or mobile telephone with regard to this Lease. You further agree and consent that we may use auto-dialers and pre-recorded messages in connection with any telephone contacts made with you, including, but not limited to, calls made and text messages sent to your cellular or mobile telephone. You understand and agree that if we call your cellular or mobile telephone or send you a text message on your cellular or mobile telephone, depending upon the type of plan or

program you have with your telecommunications provider, you may incur a charge for such telephone call or text message. Finally, you acknowledge that if you gave us an e-mail address you are specifically authorizing us to send you messages about this Lease using that e-mail address.

**54. NO WAIVER.** Our excuse of a Default does not mean that a later occurrence of that or any other Default will be excused. Any failure or delay by us in exercising any of our rights or remedies under this Lease will not cause us to lose them, and we may exercise them at any later time.

**55. LIABILITY.** If there are more than one of you, each of you shall be liable, separately and together, for the Total of Payments and all other amounts that may at any time be due and owing to us under this Lease.

**56. DELIVERY RECEIPT.** By signing this Lease, you agree that (a) you received and examined the Vehicle described in this Lease, (b) the Vehicle is as described in this Lease, and (c) the Vehicle is in good working order and condition.

**57. AUTHORITY OF DEALER.** THE DEALER IS AN INDEPENDENT CONTRACTOR AND IS NOT AFFILIATED WITH VCFS OR ASSIGNEE AS AN AGENT, PARTNER OR JOINT VENTURER. NEITHER THE DEALER NOR ANY OF ITS EMPLOYEES IS AUTHORIZED TO MAKE ANY ORAL OR WRITTEN PROMISE, AFFIRMATION, REPRESENTATION OR WARRANTY TO YOU ON BEHALF OF VCFS OR ASSIGNEE.

**58. LIMITED POWER OF ATTORNEY.** You appoint us or our agent as your attorney-in-fact to do the following: (1) settle any insurance claim related to the Vehicle, (2) endorse your name on any check or draft we receive for damage or loss of the Vehicle, and (3) to sign your name to any title, registration, or other documents related to the Vehicle, for example, state motor vehicles department applications and documents. This power of attorney is coupled with an interest in the Vehicle and is not revocable.

**59. ADDITIONAL INFORMATION AND DOCUMENTS.** During the term of this Lease, you agree to provide us with additional documents and information we may reasonably request to verify any information provided in connection with your credit/lease application or your compliance with this Lease. You also agree to sign additional documents we reasonably request to carry out the terms of this Lease, including, but not limited to, motor vehicles department forms and applications.

**60. OWNERSHIP.** We own the Vehicle solely, including all original and after-market accessories installed on the Vehicle. This is a true lease for tax and other purposes and we receive all benefits of ownership. We have not given you any tax advice regarding this Lease.

## 61. ARBITRATION CLAUSE

**PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS.**

1. EITHER YOU OR WE (LESSOR or ASSIGNEE) MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Clause, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, the condition of this Vehicle, this Lease or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Lease) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. You have the right to opt out of this agreement to arbitrate by sending a signed written notice stating your decision to opt out of arbitration to Volvo Car Financial Services U.S., LLC, P.O. Box 91300, Mobile, AL 36691-1300 within 30 days of the execution of this Lease. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Clause shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You and we expressly waive any right that either of us may have to arbitrate a class action. You may choose one of the following arbitration organizations and its applicable rules: the American Arbitration Association, 1633 Broadway, Floor 10, New York, NY 10019 (www.adr.org), or JAMS, 1920 Main Street, Suite 300, Irvine, CA 92614 (www.jamsadr.com), or any other organization that you may choose subject to our approval. You may get a copy of the rules of these organizations by contacting the arbitration organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law in making an award. The arbitration hearing shall be conducted in the federal district in which you reside unless the Lessor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this Lease was executed. We will advance your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $2500, which may be reimbursed by decision of the arbitrator at the arbitrator's discretion. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Clause, then the provisions of this Arbitration Clause shall control. The arbitrator's award shall be final and binding on all parties, except that in the event the arbitrator's award for a party less than $10,000 or against a party is in excess of $100,000, or includes an award of injunctive relief against a party, that party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel. We will advance the filing fee and other arbitration costs up to a maximum of $2,500, subject to a final determination by the arbitrators of a fair apportionment of costs. Any arbitration under this Arbitration Clause shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration. You and we retain any rights to self-help remedies, such as repossession. You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Clause shall survive any termination, payoff or transfer of this Lease. If any part of this Arbitration Clause, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Clause shall be unenforceable.

**NOTICES AND SIGNATURES**

YOU AGREE THAT ASSIGNEE AND VCFS MAY OBTAIN YOUR CREDIT REPORT, CREDIT SCORE OR OTHER CONSUMER REPORT FOR USE IN CONNECTION WITH COLLECTION OF AMOUNTS OWED UNDER THIS LEASE, ENFORCEMENT OF THIS LEASE, AND MARKETING SOLICITATIONS FOR RETAIL INSTALLMENT FINANCING OR LEASE PROGRAMS AFTER LEASE DATE.

THIS LEASE CONTAINS THE ENTIRE AGREEMENT BETWEEN YOU AND US. There are no other agreements between you and us except those included in writing in this Lease. Except for lease extensions of less than six (6) months, which may be agreed to over the telephone or through electronic communication without signature, no change of this Lease, no course of performance and no other agreement between you and us will be binding unless in writing and signed by you and us.

Lessee's Initials _____ ✔ /Co-Lessee's Initials _____ ✔

**ARBITRATION.** The parties agree that any unresolved disputes shall be submitted to arbitration in accordance with the Arbitration Clause (Section 61). By initialing this Section, you are confirming that you have read this Section and the Arbitration Clause, including the method of opting out of arbitration.

Lessee's Initials _____ ✔ /Co-Lessee's Initials _____ ✔

**NOTICE: (1) BY SIGNING BELOW, YOU AGREE TO ALL THE PROVISIONS ON THIS LEASE. (2) YOU ACKNOWLEDGE THAT YOU HAVE READ THE ENTIRE LEASE. (3) YOU ACKNOWLEDGE THAT YOU HAVE RECEIVED A COMPLETELY FILLED-IN COPY OF THIS LEASE AND OF ANY OTHER AGREEMENTS, POLICIES OR CERTIFICATES THAT YOU SIGNED OR AGREED TO PURCHASE.**

**NOTICE TO LESSEE: (1) DO NOT SIGN THIS LEASE BEFORE YOU READ IT. (2) YOU ARE ENTITLED TO A COPY OF THIS LEASE.**

**NOTICE: THE LESSEE AND THE LESSOR SHALL BE ENTITLED TO REVIEW THE CONTRACT FOR ONE BUSINESS DAY BEFORE SIGNING THE CONTRACT.**

**A. INDIVIDUAL LESSEE SIGNATURE(S)**

X _____   Name: N/A
Lessee Signature

X _____   Name: MARTIN  ASSUNCAO
Co-Lessee Signature

**B. BUSINESS LESSEE SIGNATURE**

X _____   Name: ASSUNCAO BROS INC.   Title: _Pres. dent_
Signature

**C. LESSOR SIGNATURE AND ASSIGNMENT**

The authorized signature of the Lessor below has the effect of: (1) accepting the terms and conditions of this Lease; (2) acknowledging verification of the Vehicle insurance coverage required by this Lease; and (3) assigning to VCFS Auto Leasing Company, or its successors and assigns all of its right, title and interest in and to this Lease, the proceeds of this Lease and the Vehicle, according to the terms and conditions of the Dealer Agreement between VCFS and/or VCFS Auto Leasing Company and the Lessor.

X _____   Name: SMYTHE VOLVO CARS   Title: _BM_
Authorized Signature

**SEE EACH PAGE OF LEASE AGREEMENT FOR ADDITIONAL TERMS AND CONDITIONS**